The BROTHERS JUREWICZ, INC., Respondent,

v.

ATARI, INC., Appellant.

No. 50375.

Supreme Court of Minnesota.

Aug. 15, 1980.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Mark Carl Peterson, Minneapolis, for appellant.

Maun, Green, Hayes, Simon, Murray & Johanneson and Albert A. Woodward, Minneapolis, for respondent.

Heard before ROGOSHESKE, PETERSON, and TODD, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

Plaintiff, The Brothers Jurewicz, Inc., a former manufacturer's representative of defendant, Atari, Inc., brought suit to recover sales commissions. Atari denied liability, although it was unable to locate the parties' sales agreement. Atari subsequently found the agreement and, discovering that it contained an arbitration clause, moved the trial court for an order compelling arbitration. The trial court ruled that Atari's right of arbitration had been lost through laches, and Atari now appeals. The issues raised are whether the trial court had jurisdiction over Atari's request for arbitration and, if so, whether the trial court correctly concluded that the right to arbitration was lost due to laches. We conclude that, because The Brothers Jurewicz' defense of laches is based solely on Atari's failure to seek arbitration until after litigation had progressed for nearly 1 year rather than on the merits of the underlying dispute between the parties, it was proper for the trial court to assume jurisdiction of Atari's request for arbitration. We further conclude that the trial court correctly applied the doctrine of laches.

Atari, Inc., is a California corporation engaged in the manufacture and sale of electronic video games. The Brothers Jurewicz, Inc., is a Minnesota corporation. On May 1, 1976, the parties entered into a written sales agreement which authorized The Brothers Jurewicz, to solicit orders for Atari's products within the states of North Dakota, South Dakota, and Minnesota. The agreement provided:

> In the event that any controversy or claim arising out of this Agreement cannot be settled by the parties hereto within sixty (60) days of written notice of such claim or controversy, such controversy or claim shall be settled by arbitration in accordance with the then current rules of the American Arbitration Association at the main office of such Association in the City of San Francisco, California, and

judgment upon the award by such Association may be entered in any court having jurisdiction thereof.

On June 1, 1977, Atari gave notice to The Brothers Jurewicz that it was terminating the sales agreement.[1] Approximately 1 year later, The Brothers Jurewicz commenced this action for commissions under the agreement and for certain other commissions relating to sales to a national catalog wholesaler, Creative Merchandising, under a "separate oral agreement." After receiving the complaint, Atari searched its files for documents pertaining to its relationship with The Brothers Jurewicz. Despite two extensions of time to answer, Atari was unable to locate the agreement and other important records. Finally, in August 1978, even though the documents had not been found, Atari filed an answer denying any liability to The Brothers Jurewicz.

In March 1979, The Brothers Jurewicz served interrogatories on Atari. Atari obtained extensions of time to answer. Finally, in late April 1979, Atari located the agreement and other relevant documents. Atari then responded to some of the interrogatories and objected to others. The Brothers Jurewicz moved to compel answers. Atari sought an order requiring The Brothers Jurewicz to proceed with arbitration pursuant to the agreement and staying all further proceedings. Atari also sought permission to amend its answer and to raise a counterclaim. The court ordered Atari to answer some of the interrogatories, refused to compel answers to others, and denied Atari's motion for arbitration and stay of judicial proceedings pending arbitration. In its memorandum, the court stated that Atari's right to arbitration had been lost by laches. Atari was permitted to amend its answer and to assert a counterclaim.

1. The agreement was to remain in effect until terminated by either party, at its sole discretion, on not less than 30 days' written notice to the other.

2. Because specific enforcement of an arbitration agreement is an equitable remedy, "waiv-

The threshold issue is whether the trial court erred by assuming jurisdiction over the question of Atari's having lost its right to request arbitration due to laches rather than referring it to the arbitrator. We identified this jurisdictional issue in *Har-Mar, Inc. v. Thorsen & Thorshov, Inc.*, 300 Minn. 149, 156, 218 N.W.2d 751, 756 (1974). In *Har-Mar*, the plaintiff sought to enjoin an arbitration proceeding demanded by the defendant, alleging in part that the defendant's right to proceed with arbitration was barred by laches and waiver. The trial court granted the plaintiff's motion for summary judgment, but we remanded for a trial on the merits.[2] In doing so, we deferred deciding whether this issue should have been determined by the arbitrator rather than the trial court:

The more difficult jurisdictional question as to which forum should decide the issues of laches and waiver need not be answered. Although implicitly ruled on by the trial court, the question was neither raised nor argued below or here. Moreover, both parties appear agreed that the court, rather than the arbitrators, should decide the merit of these issues on a remand; and agreement, whether or not constituting a modification of the intended scope of their arbitration clause, the parties are perfectly free to make.

300 Minn. at 157, 218 N.W.2d at 756–57. Now that the issue is squarely before us, Atari argues that both the Uniform Arbitration Act, Minn.Stat. §§ 572.08–.30 (1978), and case law compel the conclusion that issues such as laches and waiver should be initially determined by an arbitrator and that it was error for the trial court in this case to rule that Atari lost its right to seek arbitration due to laches.

■ Atari's first argument is based on Minn.Stat. § 572.09(a) (1978), which provides:

er" of an arbitration agreement is often considered in terms of the equitable defense of laches and the terms are often used interchangeably. *See Necchi Sewing Machine Sales Corp. v. Carl*, 260 F.Supp. 665, 668 (S.D.N.Y. 1966).

On application of a party showing an agreement [to arbitrate] and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised * * *.

Atari contends that this provision does not permit trial court discretion; once the moving party shows an agreement to arbitrate and a refusal by the other party to arbitrate, the statute requires the trial court to order arbitration unless the existence of the arbitration agreement is in dispute, which is not an issue in this case.[3] While this position is not without appeal, § 572.09(d) does not specifically confer upon or deny to the trial court authority to resolve the issues raised in this case. Laches is an equitable remedy, and to adopt Atari's reading of the statute would serve to restrict the equitable powers traditionally ascribed to the courts. Courts have held that unless a statute specifically, or by a necessary and inescapable inference, restricts a court's jurisdiction in equity, the full scope of that jurisdiction should be recognized. *Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946).[4]

Atari next asserts that our decision in *Layne-Minnesota Co. v. Regents of the University of Minnesota*, 266 Minn. 284, 123 N.W.2d 371 (1963), supports the conclusion that jurisdiction over questions of laches is in the arbitrator. In *Layne* the university sought a declaratory judgment construing a construction contract. Layne, the contractor, moved the trial court for an order compelling arbitration; the trial court denied Layne's motion on the ground that the dispute was not within the terms of the arbitration clause in the parties' contract. We reversed, holding that "[w]here the parties are in conflict as to the scope of the provision for arbitration * * * the issue of arbitrability [should] be initially determined by the arbitrators * * *." 266 Minn. at 291, 123 N.W.2d at 376. In our view, the *Layne* case provides only indirect support for Atari's position. In *Layne* we reasoned that an arbitrator has expertise in the area of dispute, that the scope of an arbitration clause depends upon the area of dispute, and that therefore the issue is one for the arbitrator in the first instance. When, as in this case, the issue is whether there is an equitable defense to a request for arbitration, the reason for initially referring the dispute to arbitration is less compelling.

■ Because this issue is not fully resolved by our statute or prior decisions, it is instructive to consider how other jurisdictions have dealt with it. The majority of

---

**3.** Atari also contends that its position is supported by Minn.Stat. § 572.09(e) (1978), which provides: "An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim to be arbitrated have not been shown." Atari's attempt to use this statute is improper since this provision clearly applies to "the claim sought to be arbitrated"—the underlying dispute between the parties—rather than to the claim for arbitration. Section 572.09(e) says that a party should not be precluded from seeking arbitration simply because that party's position on the dispute to be arbitrated is without merit or is not in good faith. It does not address in any way the question of whether a trial court should rule on the question of laches in seeking arbitration.

**4.** The Brothers Jurewicz contends that the Uniform Arbitration Act, specifically § 572.08, does not preclude a court from deciding preliminary issues such as waiver and laches. Section 572.08 provides in part:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, *save upon such grounds as exist at law or in equity for the revocation of any contract.* (Emphasis added.) According to The Brothers Jurewicz, the emphasized portions of this statute establish a judicial forum and procedure for testing a right to arbitration. This position is not persuasive, since this statute seems only to deal with the *enforceability* of an arbitration agreement and does not address the issue of the forum in which the agreement should be enforced.

courts, both federal[5] and state, hold that issues of laches and waiver should be decided by the arbitrator rather than the court. *E. g., International Union of Operating Engineers, Local 150 v. Flair Builders, Inc.,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); *N & D Fashions, Inc. v. DHJ Industries, Inc.,* 548 F.2d 722 (8th Cir. 1976); *Exber, Inc. v. Sletten Const. Co.,* 92 Nev. 721, 558 P.2d 517 (1976).[6] The basic rationale for this rule is that, even though laches can be termed a procedural defense, it is often intertwined with the substantive issues that underlie the basic dispute. It may be difficult, therefore, for a court to resolve the laches issue without also considering the issue to be arbitrated, and it is undesirable that issues growing out of a single factual dispute be decided in two different forums. Thus, courts have concluded that because the procedural prerequisites to arbitration do not arise in a vacuum, disputes concerning them should be left to the agreed upon arbitrator. *John Wiley & Sons Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Exber, Inc. v. Sletten Const. Co.,* 92 Nev. 721, 558 P.2d 517 (1976). In addition, one of the fundamental objectives of arbitration—speedy resolution of disputes—could be thwarted if parties were able to delay arbitration by litigating procedural formalities before the trial court. *Bartley, Inc. v. Jefferson Parish School Board,* 302 So.2d 280 (La.1974).

Some courts have held, however, that the general rule does not apply when an arbitration request is made after litigation has been instituted and the party opposed to arbitration claims laches or waiver predicated solely upon participation in the lawsuit by the party seeking arbitration. *Reid Burton Construction, Inc. v. Carpenters District Council of Southern Colorado,* 535 F.2d 598 (10th Cir.), *cert. denied,* 429 U.S. 907, 97 S.Ct. 272, 50 L.Ed.2d 188 (1976); *Necchi Sewing Machine Sales Corp. v. Carl,* 260 F.Supp. 665 (S.D.N.Y.1966). Decisions taking this position reason that courts must maintain sufficient judicial control over their own proceedings to determine the validity of equitable defenses that arise out of the actions of parties before the court. A second justification for this position is that issues such as laches may be beyond the scope of even a broadly worded arbitration clause since it is unlikely that an arbitration agreement "ever intended to include the arbitration of equitable defenses arising out of actions by a party in proceedings before a [trial] court." *Reid Burton Construction, Inc. v. Carpenters District Council of Southern Colorado,* 535 F.2d at 604.

In our view, the general rule is a sound one given the preferred status that we, along with other courts and lawmakers, have accorded to arbitration. *E. g., Grover-Dimond Associates v. American Arbitration Ass'n,* 297 Minn. 324, 327, 211 N.W.2d 787, 788 (1973). Obviously, the rationale underlying deference to arbitration will be advanced most effectively if courts do not participate in disputes governed by valid arbitration agreements. On the other hand, we think that the limited exception which allows courts to rule on a laches defense to a request for arbitration in cases where the defense is not based on the underlying dispute but instead is derived from activity

5. While there are differences between the Federal Arbitration Act (9 U.S.C.A. §§ 1–14 (1970)) and the Uniform Arbitration Act, the issue here considered is presented similarly under both acts. A seemingly important provision of the Federal Act, not found in the Uniform Act, is § 3, which states that if suit shall be brought upon an issue that is covered by an arbitration agreement, the trial court can, upon application of one of the parties, stay the trial of the action, "providing the applicant for the stay is not in default in proceeding with such arbitration." While it has been argued that dilatory conduct amounting to laches is a "default in proceed-

ing" under § 3 and therefore should be adjudicated by the trial court, the prevailing federal rule is that delay in making an arbitration demand is not a default within the meaning of § 3. *Halcon International, Inc. v. Monsanto Australia Limited,* 446 F.2d 156, 161 (7th Cir.), *cert. denied,* 404 U.S. 949, 92 S.Ct. 286, 30 L.Ed.2d 266 (1971). Thus, the federal cases generally use the same analysis as state courts.

6. *Contra, e. g., Nuclear Installation Services Co. v. Nuclear Services Corp.,* 468 F.Supp. 1187 (E.D.Pa.1979); *Tothill v. Richey Ins. Agency, Inc.,* 117 N.H. 449, 374 A.2d 656 (1977).

before the very court being urged to compel arbitration is a sensible one. Such an exception does not conflict with the rationale and policies of the general rule of leaving laches and waiver to the arbitrator[7] but instead recognizes the traditional equitable powers of a court. Accordingly, we adopt the rule that, where a case falls within the narrow factual confines of this exception, it is appropriate for a trial court to assume jurisdiction on the issue of laches and waiver.

We now decide whether this case falls within the exception to the general rule. The trial court did not elaborate upon its finding that Atari was guilty of laches, but the record indicates that the finding was undoubtedly based upon Atari's failure to request arbitration until after litigation had proceeded for nearly 1 year. The underlying dispute between the parties—whether The Brothers Jurewicz is entitled to any commissions under the sales agreement—is not at all related or intertwined with the issue of laches or waiver, and, therefore, we believe this case fits squarely within the exception to the general rule. Accordingly, we hold that it was proper for the trial court to assume jurisdiction of The Brothers Jurewicz' defense to Atari's motion to compel arbitration.

Next we reach the issue whether the trial court correctly concluded that Atari's right to request arbitration was lost due to laches. Even though parties have an agreement to arbitrate disputes, an attempt by one of the parties to enforce such an agreement may under certain conditions be challenged on the grounds of laches and waiver. We have held consistently that a party to a contract containing an arbitration provision will be deemed to have waived any right to arbitration if judicial proceedings based on that contract have been initiated and have not been expeditiously challenged on the grounds that disputes under the contract

are to be arbitrated. *Bautch v. Red Owl Stores, Inc.*, 278 N.W.2d 328 (Minn.1979); *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 84 N.W.2d 593 (1957). In *Anderson*, a factually similar case, former employees of the defendant brought suit alleging wrongful discharge; notwithstanding an arbitration clause in the agreement between the parties, the defendants answered on the merits, and a trial date was set. Sixteen months after commencement of suit, the defendants sought arbitration. We affirmed the trial court's denial of the request, holding that by their actions the defendants had waived their right to arbitration:

> The plaintiffs * * * repudiated [the arbitration provision] by commencing this lawsuit and the defendants joined in the repudiation by answering to the merits without a demand for arbitration or a motion to stay the suit until arbitration could be had. Almost uniformly such conduct on the part of the parties constitutes an abandonment or waiver of the right to arbitration and a consent to the submission of the controversy to the courts. This rule has been established by an almost uniform line of decisions and this rule is not a new one in this jurisdiction.

250 Minn. at 180, 84 N.W.2d at 602. Similarly, in this case The Brothers Jurewicz elected not to exercise its right to arbitration by bringing this action and Atari acquiesced by answering on the merits and participating in the litigation for nearly 1 year without moving the court to stay the proceedings and compel arbitration.

Atari argues, however, that the concept of waiver is based upon intentional action or inaction and that because it was unable, despite its diligent search, to locate a copy of the agreement, it had no actual knowledge of its right to arbitrate and

---

7. Since the exception is limited to cases where litigation has begun, it will be more efficient and practical for the trial judge, who presumably is familiar with what has transpired in the litigation, to decide the issue of laches than for an arbitrator who has had no connection with the litigation. If allowing the trial court to decide this issue would indeed speed the resolution of disputes, this exception would actually be consistent with the rationales underlying the general rule.

therefore could not intentionally waive it. Atari admits that the knowledge required for waiver may be constructive rather than actual knowledge; indeed, the record, explored at oral argument, clearly supports a finding that Atari had constructive knowledge of its right to arbitrate. Atari contends, however, that the concept of constructive knowledge should not be applied in this case, because it exercised proper diligence in attempting to locate the agreement containing the arbitration provision and, when it did find the agreement, it promptly asserted its right to arbitration. We are not persuaded that Atari should be excused from being held to have had constructive knowledge of its right to arbitration. Rather, as a matter of law, absent fraud or concealment, a party should be deemed to have knowledge of the terms of agreements that he has executed. *Cornell and Company, Inc. v. Barker & Ross Company,* 360 F.2d 512 (D.C.Cir.1966). We conclude, therefore, that the trial court's finding of laches was proper since Atari participated in the litigation with constructive knowledge of its right to arbitration.[8] In sum, Atari allowed this dispute to proceed through the judicial system to the point at which the issues raised were ripe for decision in that forum. To grant Atari's request for arbitration at this stage would give unfair opportunity to select a different forum and could further prolong these proceedings.

Affirmed.

---

**8.** We note with approval, however, that some recent decisions in other jurisdictions require a finding of waiver to be based not only upon a finding of intentional relinquishment of a known right but also upon a finding of prejudice to the opposing party. Thus, under this modern view, action by the party seeking arbitration which is inconsistent with the right to arbitration is not enough to support a finding of waiver unless such action is accompanied by prejudice to the objecting party. *E. g., Weight Watchers of Quebec, Ltd. v. Weight Watchers International, Inc.,* 398 F.Supp. 1057 (E.D.N.Y. 1975). In this case, granting Atari's request for arbitration would clearly be prejudicial to The Brothers Jurewicz, since it would have undergone the expense and delay of 18 months of litigation only to have the additional burden of having to resolve the dispute in California.