**MORA FEDERATION OF TEACHERS, LOCAL 1802, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT # 332, Respondent.**

No. C1-84-355.

Court of Appeals of Minnesota.

July 31, 1984.

Bruce P. Grostephan, Peterson, Engberg & Peterson, Minneapolis, for appellant.

James Knutson, Peterson, Knutson, Flynn & Hetland, St. Paul, for respondent.

Heard, considered and decided by PARKER, P.J., and FORSBERG and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

This is an appeal from an order of the district court denying the appellant union's motion to compel arbitration of a grievance. The court determined that under the terms of the collective bargaining agreement only a teacher, and not the union, could file a grievance. We reverse and order that the parties proceed to arbitration.

## FACTS

In November 1983 the 1983–84 school calendar for Independent School District No. 332 was adopted and approved. The calendar provided for 185 teacher duty days and did not include reference to a computer workshop which the school board had previously informed the teachers would be scheduled for the upcoming year. In July 1983 the teachers were notified that the computer workshop would be held in August, several days before the school year was to begin.

Upon protest by the teachers, the Mora Federation of Teachers, Local 1802 (hereinafter "union"), the exclusive bargaining unit of the teachers, filed a class action grievance against the school district, alleging that the workshop extended the number of teacher duty days to 189, which modified the calendar and affected the teachers' hours of work and compensation therefor.

The senior high principal, the superintendent of schools and the school board all determined that the union's complaint did not meet the definition of "grievance" in the collective bargaining agreement and that the agreement made no provision for a class action brought by the union.

The union submitted a request for arbitration to the school district which the district denied, claiming that a list of arbitrators had not been supplied as required by the collective bargaining agreement. Upon denial of its request for arbitration, the union brought a motion in district court to compel arbitration. The district court de-

nied the motion, concluding that the union lacked standing under the terms of the collective bargaining agreement to pursue this grievance.

## ISSUES

1. Does the union have standing to pursue the alleged grievance?

2. Did the union follow the proper grievance procedures under the collective bargaining agreement?

3. Has the union alleged a grievance which is subject to arbitration under the collective bargaining agreement?

## ANALYSIS

### I

The threshold issue in this case, and the sole issue addressed by the district court, is whether the union is given authority by the collective bargaining agreement to pursue this grievance. The district court concluded that only a teacher, and not the bargaining representative, could file a grievance.

The collective bargaining agreement defines a "grievance" as:

[A]n allegation by a teacher resulting in a dispute or disagreement between the teacher employee and the school board as to the interpretation or application of terms and conditions of employment contained in this Agreement.

The school district argues that the above language requires a teacher actually to file the grievance, whereas the union's position is that although a teacher must allege harm which results in a dispute, the teacher's representative may actually file and pursue the action on behalf of the teacher.

The district court found the above language unambiguous and determined that a teacher must actually file the grievance. There are, however, other provisions in the collective bargaining agreement which support the union's position that it may proceed on behalf of the teachers. Article II states:

In accordance with the PELRA the school district recognizes Local 1802 as the exclusive representative of teachers employed by the school board of Independent School District 332 * * * which, as exclusive representative, shall have those rights and duties as prescribed by the PELRA and as described in the provisions of this Agreement.

"PELRA" is the Public Employment Labor Relations Act, Minn.Stat. Ch. 179. The "rights and duties as prescribed by the PELRA" are those of an "employee organization," which is defined in the statute as "any union or organization of public employees whose purpose is, in whole or in part, to deal with public employers concerning *grievances* and terms and conditions of employment." Minn.Stat. § 179.63, subd. 5 (1982) (emphasis supplied).

■ By referring to this language in the statute, the parties' agreement would appear to allow the union to file and arbitrate grievances on behalf of its members. Similar to an attorney who represents his clients and files actions on their behalf, a union's duties include the representation of its employees and protection of their interests. *Eisen v. State of Minnesota, Department of Public Welfare,* 352 N.W.2d 731 (Minn.1984). Failure to indicate expressly in the agreement that the union cannot also file actions on behalf of its members makes the union's argument that it has this authority both reasonable and plausible.

Language in Article XII, Section 2, of the parties' agreement provides specifically that either party may be represented during any step of the procedure by any person or agent. Article V, Section 1, states:

Nothing contained in this Agreement shall be construed to limit, impair or affect the right of any teacher *or his representative* to the expression or communication of a view, *grievance,* complaint or opinion on any matter related to the conditions or compensation of public employment or their betterment * * *.

(Emphasis supplied). The above language clearly lends support to the union's position that it has standing to file this grievance on behalf of the teachers.

The school district argues that an examination of the parties' collective bargaining process in the past clarifies the intent of the parties and demonstrates that the agreement allows only a teacher to file a grievance. The school district has submitted an affidavit of the district superintendent stating that during the course of negotiating the collective bargaining agreement in the past, the union expressed a desire to include specific language defining "grievance" as a dispute by the union or a group of teachers. Because this language was never included in the agreement, the school board argues that somewhere in the negotiation process the union gave up the right to file a grievance on behalf of the teachers. It is just as possible, however, that the union, in fact, decided not to insist upon this express language because other provisions in the agreement (i.e., those provisions discussed above) already conferred this right by implication. It should be noted that at the same time this language was allegedly "bargained away," the contract was modified to allow "either party" to be represented at any step of the grievance procedure, rather than only the school board, as the contract had previously provided.

The above analysis demonstrates that whether the agreement allows the union to file a grievance on behalf of its employees requires interpretation. The recent decision of *Eisen v. State of Minnesota, Department of Public Welfare*, 352 N.W.2d 731 (Minn.1984), is therefore distinguishable, since in that situation the parties' agreement expressly permitted only the union to invoke the arbitration process.

 Because it requires interpretation in this instance to determine whether the union has standing to bring this grievance, this issue should be submitted to an arbitrator for determination. In *Brothers Jurewicz, Inc. v. Atari, Inc.*, 296 N.W.2d 422, 426–27 (Minn.1980), the Minnesota Supreme Court noted that procedural issues should generally be resolved by the arbitrator who hears the substantive issues. In *Minnesota Federation of Teachers, Local 331 v. Independent School District No. 361*, 310 N.W.2d 482, 484 (Minn.1981), the court again held that "whether the procedural prerequisites to arbitration have been complied with is generally to be determined by an arbitrator." Since the issue of whether a party has standing to bring an action is clearly a prerequisite to the litigation of that action, under the *Atari* and *Federation of Teachers* decisions, the standing issue in this instance should be determined by an arbitrator.

## II

The second issue raised by the parties is whether the union followed the proper grievance procedures established by the collective bargaining agreement. Specifically, the school district alleges that the union should have provided a list of arbitrators from the Public Employment Relations Board, rather than from the Bureau of Mediation Services.

Again, this issue is strictly a question of whether the procedural prerequisites to arbitration have been complied with under the collective bargaining agreement and must be determined by the arbitrator.

## III

The school district also questions whether the subject of the workshop scheduling is an arbitrable grievance under the collective bargaining agreement. The trial court did not address this issue, since it determined that the union lacked standing to bring the grievance.

The test for determining whether a grievance is arbitrable is set forth in *Minnesota Education Association v. Independent School District No. 495*, 290 N.W.2d 627, 629 (Minn.1980), quoting from *Atcas v. Credit Clearing Corp.*, 292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972):

(1) If the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract, the matter is for the arbitrators to determine and not the court. (2) If the intention of

the parties is reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrators subject to the rights of either party reserved under Minn.St. 572.19, subd. 1(3, 5). (3) If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate (§ 572.09[a, b]).

In the present situation the collective bargaining agreement defines "grievance" as a "dispute or disagreement * * * as to the interpretation or application of *terms and conditions of employment contained in this agreement*" (emphasis supplied). The agreement states that "terms and conditions of employment" include the hours of employment and compensation therefor and the length of the school year and number of teacher duty days. The issue in this instance is whether the number of teacher duty days was increased when the computer workshop was added to the 1983–84 school calendar and whether that increase required additional compensation. Since this issue appears to be directly related to the terms and conditions of employment, it is at least reasonably debatable that the issue is arbitrable.

In *Minnesota Federation of Teachers, Local 331*, 310 N.W.2d 482, the court addressed a similar issue. In that case, where prior policy had been to assign teachers to four classes plus one period of supervision per day, the school board increased the teachers' student contact time to five classes and one period of supervision per day. The district court denied the teachers' motion to compel arbitration but the Supreme Court reversed, reasoning that the new plan appeared to increase the teachers' hours of employment and affect their rate of compensation.

A similar result was reached in *Cloquet Education Association v. Independent School District No. 94*, 344 N.W.2d 416 (Minn.1984). There, the teachers alleged a change in the terms and conditions of employment when the school district unilaterally assigned a teacher to chaperone one senior high dance. The school district refused to proceed with the teacher's grievance, claiming that the assignment was a matter of inherent managerial policy. The district court agreed and denied the teacher's motion to compel arbitration. Again, the Supreme Court reversed, finding that the teacher's hours of service had been changed by the chaperone assignment:

> Assignment of a teacher to an additional, out-of-class activity clearly affects that teacher's hours of service. Thus we find it comes squarely within the parties' definitions of terms and conditions of employment.

*Id.* at 418.

The *Cloquet* court found a clear intent to arbitrate and the *Minnesota Federation of Teachers Local 331* court found the intention "reasonably debatable" under the *Atcas* standard noted above. The facts of the instant case warrant a finding that the intent of the parties was at least reasonably debatable, requiring determination by an arbitrator.

## DECISION

The trial court erred by determining that language in the parties' collective bargaining agreement concerning standing was unambiguous. The standing issue, in addition to questions regarding adherence to the proper grievance procedures and arbitrability of the dispute, should be decided by an arbitrator.

Reversed and remanded.