PREFERRED FINANCIAL
CORPORATION, Plaintiff,

v.

QUALITY HOMES, INC., Defendant.

and

QUALITY HOMES, INC., Third-Party
Plaintiff, Respondent,

v.

PINETREE BUSINESS SYSTEMS,
INC., et al., Third–Party
Defendants,

Empire Fire and Marine Insurance
Company of Omaha, Nebraska,
Third-Party Defendant, Appellant.

No. CO–88–1876.

Court of Appeals of Minnesota.

May 16, 1989.

Paul L. Ratelle, Richard G. Jensen, Fabyanske, Svoboda, Westra & Davis, St. Paul, for respondent.

Gregory J. Collins, John M. Mulligan, Mulligan & Bjornnes, Minneapolis, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and HUSPENI and SCHULTZ, JJ.*

## OPINION

HUSPENI, Judge.

This appeal arises from the trial court's denial of appellant's motion for a new trial. Appellant contends that it was an error of law not to submit the matter to arbitration upon post-trial motion. We affirm.

## FACTS

In 1984 respondent, Quality Homes, Inc., purchased a computer system from the predecessor of Pinetree Business Systems, Inc. (Pinetree) under a lease arrangement with Preferred Financial Corp. (Preferred) for the purposes of financing. Respondent experienced problems with the system after delivery. A substitute system also performed inadequately and respondent discontinued payments. The hardware and software were seized by the Sheriff in connection with a replevin action commenced by Pinetree. Pinetree and respondent entered into a stipulation, under the terms of which Pinetree would attempt to return the computer system by September 6, 1985, respondent would authorize Preferred to release to Pinetree $27,593, and Pinetree would then pay $1,600 to respondent. If Pinetree did not perform as required by the stipulation, liquidated damages of $100 per day would accrue against it for 90 days after a 30 day period to perform. Any dispute as to respondent's reasonable satisfaction with Pinetree's performance would be referred to an arbitrator subject to reasonable agreement between the parties. At respondent's option Pinetree would be obligated to repurchase the equipment at the end of the 30 or 120 days. Pinetree was to obtain a bond in the amount of $36,000 to guarantee the repurchase.

Pinetree obtained two bonds from appellant Empire Fire & Marine Insurance Co. (Empire) totaling $36,250 and appellant executed a bond rider which provided that appellant and Pinetree agreed to accept a decision of an arbitrator and/or the court as provided by the stipulation. After delivery of the computer system to respondent, Preferred instructed its assignee, Norwest Bank of Stillwater (Norwest) to release the funds to Pinetree. Norwest offset the funds against a previous obligation of Pinetree. Pinetree discontinued performance to respondent, and three months later respondent discontinued payments under the financing lease.

Pinetree failed to complete all of the terms of the stipulation and ceased performance under the agreement November 20, 1985. No party made a motion to compel arbitration. Preferred commenced an action against respondent in April 1986 to collect sums owed under the terms of a financing lease. Respondent initiated a

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

third party action against, *inter alia,* Pinetree and appellant. Preferred's motion for summary judgment against respondent was granted; appellant's motion for similar relief was denied.

During the course of the trial on the remaining issues, respondent abandoned all causes of action except the breach of the stipulation against Pinetree and breach of contract against appellant for failure to pay on the $36,250 bonds. The court found in favor of respondent against Pinetree for $1,600 and against appellant for $36,250.

Appellant's motion for amended findings of fact and conclusions of law, or in the alternative a new trial, was denied.

## ISSUES

1. Did the trial court err in denying appellant's motion for a new trial based on a refusal to submit the issues between the parties to binding arbitration?

2. Did the trial court err in denying appellant's motion for new trial based on any lack of factual testimony on the arbitration issue?

3. Did the trial court err in denying appellant's motion for a new trial based on failure of the trial court to adhere to the language of the stipulation regarding surety liability?

4. Did the trial court err in denying appellant's motion for a new trial based on a refusal to allow testimony on respondent's failure to mitigate damages?

## ANALYSIS

■ This court's scope of review is limited to the grounds raised in appellant's motion for a new trial. The denial of the motion for amended findings of fact and conclusions of law is not appealable of right. *Kempf v. Kempf,* 287 Minn. 529, 177 N.W.2d 40 (1970); Minn.R.Civ.App.P. 103.03.

The standard of review is that appropriate to the denial of the motion for a new trial.

Trial courts have broad discretion in deciding whether a new trial is required, and a decision to deny a motion for a new trial will not be reversed unless there was a clear abuse of discretion. *Law v. Essick Mfg. Co.,* 396 N.W.2d 883, 888 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Jan. 27, 1987).

■ 1. Appellant argues that the trial court erred as a matter of law by failing to submit this dispute to binding arbitration. We cannot agree.

Arbitration agreements are generally controlled by chapter 572. The statutory scheme provides for recognition of written arbitration agreements as valid and enforceable except for the equitable or contractual grounds that would limit any contract. Minn.Stat. § 572.08 (1986). The purpose of the arbitration statutes is to encourage the speedy and inexpensive resolution of commercial disputes which could otherwise require action in court. *See Layne–Minnesota Co. v. Regents of University of Minnesota,* 266 Minn. 284, 287–88, 123 N.W.2d 371, 374 (1963). Additionally, section 572.09 (1986) provides for procedures to compel or stay arbitration.

Appellant argues that because respondent was a party to the stipulation, and because the stipulation contained a provision that disputes concerning performance could be referred to an arbitrator, the trial court should have compelled respondent to arbitrate. Respondent asserts that appellant has waived any right to compel arbitration.

We note initially that "In Minnesota, the right to arbitration may be waived." *County of Hennepin v. Ada–Bec Systems,* 394 N.W.2d 611, 613 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 17, 1986). "The key to a valid claim of waiver is the intent of the party to be charged." *Id.* An action by the party resisting waiver inconsistent with the right of arbitration, and prejudice to the party asserting waiver are additional requirements. *See Brothers Jurewicz, Inc. v. Atari, Inc.,* 296 N.W.2d 422, 428–29 n. 8 (Minn.1980). Here, appellant did not move to compel arbitration until after trial on the merits. *See* Minn.Stat. § 572.09.

In *Ada–Bec,* the sureties moved to stay court proceedings pending arbitration. "The trial court denied the motion, ruling that the sureties had, by their conduct, waived their arbitration defense." *Ada–Bec,* 394 N.W.2d at 612. The reviewing court in reversing found no such intent to waive arbitration because the sureties had asserted arbitration as a defense in their answer, and did nothing inconsistent with an intent to arbitrate. *Id.* at 613–14. Participation in discovery by the sureties and a delay in requesting arbitration were not considered sufficient to show waiver. *Id.* at 613. Significantly, however, the sureties' motion to compel arbitration was apparently made after filing a notice of non-readiness for trial and before trial on the merits had actually begun. *Id.* at 612.

By comparison, the court in *Atari* found that the right to arbitration had been waived. *Atari,* 296 N.W.2d at 429. There is no indication in that case that an arbitration defense had been asserted in an answer. Although the trial portion of the proceedings had apparently not yet begun, Atari participated in responding to interrogatories and requested permission to amend its answer and assert a counterclaim. *Atari* at 425. The extent of participation in the litigation and delay of nearly one year before moving the court to compel arbitration were noted by the Supreme Court in *Atari* when it affirmed the trial court's determination of waiver of arbitration rights:

> In sum, Atari allowed this dispute to proceed through the judicial system to the point at which the issues raised were ripe for decision in that forum. To grant Atari's request for arbitration at this stage would give unfair opportunity to select a different forum and could further prolong these proceedings.

*Id.* at 429.

This case, though like *Ada–Bec* in that appellant raised an arbitration defense in its answer, involves the same concerns addressed by the *Atari* court regarding un-fairly prolonging the proceedings. The issues in *Atari* were characterized as "ripe for decision" in the trial court forum. Here the issues had already been decided there, and thus present an even stronger case for a finding of waiver. Also, appellant had earlier opportunities to bring a motion to compel arbitration but apparently chose not to do so, relying instead on its summary judgment motion. The choice to proceed with a summary judgment motion suggests a deliberate weighing of the possibilities and development of a strategy, and evinces an intent not to seek arbitration.

■ Appellant alternatively argues that the "raising of the arbitration issue by Pinetree and Empire during its opening argument at trial is tantamount to a motion to compel." That argument was couched in terms of an offer of proof:

> The first offer of proof, Your Honor, relates to the theory that Pinetree and Empire are not liable in this action because Quality Homes has failed to arbitrate these issues pursuant to the specific terms of the Stipulation * * *.

Comparison of this language with the language of appellant's summary judgment motion memorandum demonstrates that appellant is substantially recasting its summary judgment argument. That argument cannot be reasonably construed as a motion to compel arbitration. Appellant's assertion that its opening statement was "tantamount" to a motion to compel is without merit.[1]

Federal case law, relied upon by the trial court, also supports waiver. In refusing to remand for arbitration after trial, the court in *Neuman v. Pike,* 456 F.Supp. 1192 (S.D. N.Y.1978) affirmed in part, reversed in part by *Neuman v. Pike,* 591 F.2d 191 (2nd Cir.N.Y.1979) (arbitration issue mooted) stated:

> Pike * * * fully participated in the trial of this action, and he has resisted Neuman's claims on the basis of the existence and viability of the October, 1975

---

1. We agree with the trial court's observation that even if appellant's summary judgment motion was in fact a motion to compel arbitration, the time to appeal such a motion to compel has expired under Minn.R.Civ.App.P. 104.01.

agreement, which contains the arbitration provision. He has thus waived his right to arbitration. Moreover, the case has been fully litigated before me and a hearing before the American Arbitration Association, or before another court, would involve a repetition of the evidence and the arguments already presented.

*Pike* at 1209.

To grant arbitration or a new trial under the circumstances of this case would frustrate the very purposes behind the arbitration statutes—speedy, inexpensive, informal dispute resolution.

Finally, as indicated in *Atari*, a finding of prejudice to the party asserting waiver must be found. *Atari*, 296 N.W.2d at 429 n. 8. The additional expense and delay that would issue from arbitration or a new trial is sufficient to find prejudice to respondent here. *Id.*

The trial court did not abuse its discretion in denying a motion for a new trial which had as its basis the failure to submit the case for arbitration after trial on the merits.

■ 2. In denying appellant's summary judgment motion the trial court noted:

None of the parties to the stipulation anticipated the events which precipitated the dispute. The factual complications which arose and the subsequent positions taken by the parties rendered the current action unsuitable to the process of arbitration.

Appellant analyzes this language together with the trial court's rejection of the offer of proof on arbitration and concludes that the trial court decided factual matters without allowing appellant an opportunity to submit relevant evidence. Appellant's argument lacks merit. While the trial court did use the words "factual complications" in its memorandum, only a tortured construction of the language could lead to a conclusion that the court decided factual matters on summary judgment. The language can more accurately be described as a general commentary on the posture of the proceedings and a rejection of appellant's theory that it was excused from performance because no arbitration had taken place.

Also, neither the memorandum supporting the summary judgment order nor the order itself concluded as a matter of law that arbitration could not have been compelled. That issue had not been raised by appellant. The trial court's comments at trial indicate that it, in effect, determined that arbitration was not a condition precedent for enforcement of the bonds in a court proceeding:

This Court had before it motions for summary judgment based on a claim that the matter was required to be submitted to arbitration, the Court considering the question of whether or not the parties are bound to proceed to arbitration before initiating a jurisdictional matter. The Court had found by its Order that the Court previously issued, that the effect of the comment of the party was such that arbitration was not a necessary alternative to litigation; and the Court, therefore, denied the motions for summary judgment, finding that the matter of arbitration did not intervene or interrupt the jurisdiction of this court.

Once again, federal authority is supportive of the trial court's analysis. In *Central Trust Co. v. Anemostat Prods. Div.*, 621 F.Supp. 44 (S.D.Ohio 1985) the defendant moved for summary judgment based on plaintiff's failure to arbitrate, arguing that arbitration was a condition precedent to recovery. *Id.* at 45. The *Anemostat* court found that despite an arbitration clause, arbitration was not a condition precedent to the bringing of a lawsuit. *Id.* at 46.

There was no abuse of discretion in the trial court's ruling on the arbitration issue.

■ 3. Appellant's next argument urges that by their terms the bonds limit appellant's liability to that established by an arbitrator as provided by the stipulation.

The key language cited by appellant is contained in the bond rider:

The bonding company and Pinetree Business Systems, Inc., as evidenced by their signatures below agree to be bound by the terms and conditions of the stipula-

tion and agree to accept a decision of an arbitrator and/or the Court as provided by the stipulation.

This language, reasonably construed, states that the parties agree to accept the decision of either an arbitrator or a court, whichever is provided for in the stipulation. Neither the rider nor any other language in the stipulation indicates that the dispute may be resolved only by arbitration, nor is there any language which makes arbitration a condition precedent to litigation. At most, there may be ambiguity due to the absence of a specific provision on the priority of arbitration or litigation.

In *Longfellow v. McGregor*, 56 Minn. 312, 57 N.W. 926 (1894), a bond with sureties was held to be enforceable despite an unintentional omission of a conditional clause, because

> [I]f what was intended as the condition may be ascertained from the terms, read in connection with the circumstances under which, and the purposes for which, as shown by those circumstances, the bond was executed, it must be sustained.

*Id.* at 316, 57 N.W. at 927.

The parties here were attempting to save a commercial transaction gone awry. They recognized that this attempt might not be successful, and provided for some form of dispute resolution. The language in the rider provides that arbitration was one valid option for dispute resolution. Court action was another valid option.

The stipulation provides that in the event of a dispute

> the matter will be referred to an arbitrator with expertise in computer matters subject to reasonable agreement between the counsel for the parties.

This language is not absolute. It contains the qualification that arbitration is "subject to reasonable agreement between counsel for the parties."

The language of the bonds, the rider, and the stipulation does not preclude the action taken by the trial court or make arbitration a prerequisite to that action.

4. Lastly, appellant argues that the trial court erred in refusing to consider as a matter of law the mitigation of damages issue. Appellant contends, in effect, that respondent was under a duty to sell the computer to mitigate those damages which resulted from declining market value.

We must first determine whether Uniform Commercial Code Article 2 provisions apply. The trial court and respondent characterize the stipulation as a modification of an agreement for the sale of goods. Appellant, however, argues that the stipulation contained terms different from the sales contract, arose out of a replevin action, and was pled as a separate cause of action, and, therefore, was not a modification of an agreement for the sale of goods, and Article 2 would not apply.

■ We find the characterization of the stipulation as a modification of an agreement for the sale of goods to be reasonable. *See* Minn.Stat. § 336.2–209(1) (1986). The purpose of the stipulation was to fix the rights and responsibilities of buyer, seller, financing entity, and surety with regard to the sale and satisfactory performance of the computer hardware and software. It was an attempt to reach an agreement regarding the sale of goods. The ultimate goal of the stipulation was the satisfaction of buyer and seller with the sales transaction.

■ Minn.Stat. § 336.2–602(2) (1986) provides that:

> (b) if the buyer has before rejection taken physical possession of goods * * * the buyer is under a duty after rejection to hold [the goods] with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but
>
> (c) the buyer has no further obligations with regard to goods rightfully rejected.

Also, the provisions of section 336.2–603(1) (1986) requiring the buyer to make reasonable efforts to sell goods on behalf of the seller only apply to (1) merchant buyers when (2) the seller has no agent or place of business in the market of rejection, or (3) when the goods are perishable or may otherwise rapidly decline in value. Only the last of these three necessary requirements,

the rapid decline in value, could possibly be met here. The scope of Minn.Stat. § 336.2–603(1) is narrow. It contains no broadly defined resale duty for buyers who reject goods. If the parties' agreement is a modification of a sale agreement under the UCC, Minn.Stat. § 336.2–603(1) makes no requirement that respondent attempt to resell the computer to mitigate damages.

■ As the trial court noted, even if common law and not Article 2 were applicable, the stipulation itself requires Pinetree to repurchase the hardware at the option of respondent, without requiring arbitration as a condition precedent to the repurchase.

We conclude, therefore, that under either Article 2 or the language of the stipulation, respondent had no duty to resell the computer. The trial court properly determined that appellant's mitigation defense was inapplicable as a matter of law.

### DECISION

The trial court properly denied appellant's motion for a new trial. There was no error of law or abuse of discretion in denying the motion when appellant first requested arbitration of the dispute after trial on the merits was completed. Appellant's other theories for its motion for a new trial are without merit.

Affirmed.