*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0797**

Edgar C. Ray, et al.,
Respondents,

vs.

Timothy Roen Kraft, aka T. Roen Kraft aka Roen Kraft,
Defendant,

Mark Hoiseth, et al.,
Appellants.

**Filed January 20, 2026
Affirmed
Frisch, Chief Judge**

Hennepin County District Court
File No. 27-CV-24-9695

Thomas C. Atmore, Patrick C. Bower, Martin & Squires, P.A., St. Paul, Minnesota (for respondents)

Christopher L. Goodman, Richard J. Sauceda, Thompson, Coe, Cousins & Irons, LLP, St. Paul, Minnesota (for appellants)

Considered and decided by Frisch, Chief Judge; Worke, Judge; and Cochran, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Chief Judge

Appellants argue that the district court erred by denying their motion to compel arbitration. Because the claims asserted against appellants fall outside the scope of the arbitration agreement, we affirm.

## FACTS

The following facts are alleged in the amended complaint. In 2023, respondents Edgar and Brenda Ray listed their Minnesota residence for sale for $15,250,000. Timothy Roen Kraft, represented by appellant real estate agent Mark Hoiseth, offered to buy the property for $14,000,000 in cash with a $1,000,000 earnest-money deposit. As part of the transaction, the Rays, Kraft, Hoiseth, and the Rays' listing agent signed a "Residential Real Property Arbitration Agreement" on May 4, which provided that any dispute "about or relating to material facts affecting the use or enjoyment of the property," including claims of fraud, misrepresentation, breach of warranty, or negligence, would be subject to binding arbitration. The parties then executed a purchase agreement two days later, and Kraft agreed to deposit the $1,000,000 of earnest money by May 9. Closing was scheduled for May 22.

Kraft did not deposit the earnest money. After the deadline to deposit the earnest money passed, Hoiseth informed the Rays that the earnest money funds would be available in a few days. Relying on Hoiseth's assurance that the earnest money deposit would be forthcoming, the Rays executed an addendum to the purchase agreement, extending the deposit deadline by six business days. Kraft again failed to deposit the earnest money, and the sale never closed. The Rays eventually retained counsel to cancel the purchase agreement. They also learned that Kraft had previously agreed to and then failed to close a similar real estate transaction and that Hoiseth represented Kraft in that failed transaction. The Rays later alleged that Hoiseth knew, or should have known, that Kraft never intended to complete the purchase of the property.

2

The Rays sued Kraft and Hoiseth in March 2024, asserting claims of fraud and negligent misrepresentation. Following a stipulation, the Rays amended their complaint to add Johnson Hoiseth, LLC, as a defendant. Hoiseth and the LLC (the Hoiseth defendants) answered both the original and amended complaints without invoking the arbitration agreement, filed a cross-claim against Kraft, and stipulated to the amendment adding the LLC. Kraft has not appeared in the litigation. The district court issued a scheduling order in September 2024 setting discovery and mediation deadlines. The parties exchanged initial disclosures in October 2024. Then, the Hoiseth defendants retained new counsel. Shortly thereafter, the Hoiseth defendants informed the Rays that the dispute was subject to binding arbitration and, in early November, moved the district court to compel arbitration.

The district court denied the motion. It concluded that the arbitration agreement was valid, but not enforceable here, because the Rays' negligent-misrepresentation and fraud claims fell outside the scope of the arbitration agreement. The district court reasoned that these claims concern misrepresentations about Kraft's intent and financial capacity to complete the transaction, not the use and enjoyment of the property itself. The district court also determined that the Hoiseth defendants had not waived the right to compel arbitration, explaining that they moved to compel arbitration promptly after new counsel took over the case and before any substantive discovery or motion practice had occurred. On appeal, the Hoiseth defendants challenge the district court's denial of the motion to arbitrate, and the Rays challenge the district court's determination that the right to arbitrate was not waived.

**DECISION**

We review a district court's determination of arbitrability de novo. *Amdahl v. Green Giant Co.*, 497 N.W.2d 319, 322 (Minn. App. 1993). We are "not bound by the [district] court's interpretation of the arbitration agreement and [we] independently determine[] whether the [district] court" provided the correct interpretation. *Elsenpeter v. St. Michael Mall, Inc.*, 794 N.W.2d 667, 672 (Minn. App. 2011) (quotation omitted). "When considering a motion to compel arbitration, [our] inquiry is limited to (1) whether a valid arbitration agreement exists, and (2) whether the dispute falls within the scope of the arbitration agreement." *Amdahl*, 497 N.W.2d at 322; *see also* Minn. Stat. § 572B.06(b) (2024). "If the court determines that an agreement to arbitrate a dispute exists, the court must order arbitration." *Amdahl*, 497 N.W.2d at 322. "[A]ny ambiguities surrounding the scope of issues subject to arbitration must be resolved in favor of arbitration." *Provost v. Lundmark*, 15 N.W.3d 664, 669-70 (Minn. App. 2024) (quotation omitted). "Because arbitrability issues turn on the intent of the parties as expressed in their agreement, we turn to 'the plain language of the instrument itself' to discern" that intent. *Id.* at 670 (quoting *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004)).

Against this backdrop, we consider the existence and scope of the arbitration agreement to the underlying claims.

## I. The arbitration agreement survived termination of the purchase agreement.

We must first address whether a valid arbitration agreement exists, considering the termination of the purchase agreement. *Amdahl*, 497 N.W.2d at 322. The district court determined that the arbitration agreement was valid, notwithstanding the termination of the

4

purchase agreement. And in so doing, the district court noted that the Rays "d[id] not dispute the validity" of the arbitration agreement.

On appeal, the Rays appear to argue that, although the arbitration agreement was valid when executed, the agreement to arbitrate did not survive termination of the purchase agreement. Because the Rays did not advance this argument before the district court, any dispute regarding the validity of the arbitration agreement on appeal is forfeited. *See Stone v. Invitation Homes, Inc.*, 4 N.W.3d 489, 494 & n.6 (Minn. 2024) (holding that a party forfeited its argument raised for the first time on appeal).

Even so, we note that the agreement to arbitrate is a stand-alone contract, separate from the purchase agreement. The arbitration agreement itself contains language confirming its independence from the purchase agreement. For example, the arbitration agreement provides that by signing the agreement, the parties "agree to the following": "The ARBITRATION AGREEMENT is not part of the *Purchase Agreement*. Your *Purchase Agreement* will still be valid whether or not you sign the ARBITRATION AGREEMENT." And there is no provision in the arbitration agreement providing that cancellation of the purchase agreement somehow affects the agreement to arbitrate. The arbitration agreement therefore remains in effect because it is distinct from, and not dependent upon, the purchase agreement. *See, e.g.*, *Peggy Rose Revocable Trust v. Eppich*, 640 N.W.2d 601, 603 (Minn. 2002) (noting that the standard arbitration agreement produced by the Minnesota Association of Realtors "accompanied but was not a part of the" purchase agreement at issue).

5

**II.** **The fraud and negligent-misrepresentation claims are outside the scope of the arbitration agreement.**

We next address whether the Rays' fraud and negligent-misrepresentation claims fall within the scope of the arbitration agreement. *Amdahl*, 497 N.W.2d at 322. "Determining whether a party has agreed to arbitrate a particular dispute is a matter of contract interpretation that we review de novo." *Glacier Park Iron Ore Props., LLC v. U.S. Steel Corp.*, 961 N.W.2d 766, 771 (Minn. 2021). To determine the scope of arbitrable claims, we "turn to the plain language of the instrument itself." *Provost*, 15 N.W.3d at 670 (quotation omitted). In interpreting that language, "we assign unambiguous contract language its plain meaning." *Id.* (quotation omitted). And we do not read words and phrases in isolation but consider their meaning in the context of the entire contract. *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997).

The Rays allege that Hoiseth fraudulently and negligently misrepresented Kraft's intent to purchase the property. They argue that Hoiseth is liable because he knew that Kraft never intended to complete the real estate transaction. The Rays claim that Hoiseth's misrepresentation harmed them because they had to hire counsel to cancel the purchase agreement; the property remained unmarketable for a year; the property's value decreased by at least $1,000,000; and they incurred costs for taxes, utilities, and other maintenance related to the failed transaction. The Rays' claim is therefore about the transaction itself, not the use and enjoyment of the property. The Hoiseth defendants do not dispute the characterization of the underlying claims for fraud and negligent misrepresentation but argue that the Rays' assertion of damages related to the alleged diminution in property

6

value "undoubtedly affected [the Rays'] use or enjoyment of the [p]roperty" because the property's loss in value "has long been recognized as a damage that affects an owner's use or enjoyment of their property." We are not persuaded.

The plain language of the arbitration agreement provides for arbitration of any dispute "about or relating to material facts affecting the use or enjoyment of the property," including claims of fraud, misrepresentation, breach of warranty, or negligence. Such disputes involve material facts about the property itself. The material facts central to the Rays' allegations, by contrast, concern the transaction to purchase the property. They allege that Kraft misrepresented his intent and ability to purchase the property and never intended to close the transaction, and that the Hoiseth defendants failed to disclose these facts, which are material to the transaction. These material facts are not about the property, but instead about Hoiseth. Indeed, the Hoiseth defendants agree, stating in their brief and confirming at oral argument that "[t]he Rays' claim is about or related to Hoiseth's alleged failure to disclose material facts regarding Kraft's intention to purchase the Property." Because the material facts at issue in the underlying dispute are about the transaction, not about the use or enjoyment of the property, the claims are outside the scope of the arbitration agreement.

## III. The district court did not abuse its discretion in determining that the Hoiseth defendants did not waive the right to demand arbitration.

Finally, we address whether the Hoiseth defendants waived the right to arbitration. The Rays argue that the Hoiseth defendants waived the right to demand arbitration by participating in litigation for eight months. "Courts will not grant a motion to compel

7

arbitration brought by a party who waived its contractual right to arbitration." *Stern 1011 First St. S., LLC v. Gere*, 937 N.W.2d 173, 177 (Minn. App. 2020) (citing *Bros. Jurewicz, Inc. v. Atari, Inc.*, 296 N.W.2d 422, 428 (Minn. 1980)), *rev. denied* (Minn. Mar. 25, 2020). A party alleged to have waived the right to arbitration must have "voluntarily and intentionally relinquishe[d] it." *Id.* And the party opposing arbitration must show that they would be prejudiced if ordered to arbitrate. *Id.* at 179.

Whether a party waived its right to arbitration is a question of fact that we will not set aside "unless the finding is clearly erroneous." *Id.* at 177. The district court may "infer that a party has waived its right to arbitration if, after judicial proceedings have been initiated, the party fail[ed] to 'expeditiously challenge' the proceedings on the ground that the dispute should instead be arbitrated." *Id.* (quoting *Bros. Jurewicz*, 296 N.W.2d at 428). Under the clear-error standard of review, so long as the record reasonably supports the district court's findings, we will not reverse, even if the record could also support the opposite finding. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 223 (Minn. 2021). When reviewing findings of fact for clear error, we "view the evidence in a light favorable to the findings," do not "reweigh the evidence," do not find facts, and do not "reconcile conflicting evidence." *Id.* at 221-22 (quotation omitted).

Against this backdrop, we conclude that the district court did not clearly err in finding that the Hoiseth defendants did not waive the right to arbitration. The district court concluded that the Hoiseth defendants' actions in answering the original complaint, stipulating to and then answering the amended complaint, and accepting the district court's scheduling order did not indicate an intent to relinquish the right to arbitration. Instead,

8

the district court found relevant of an intent not to waive arbitration the fact that the Hoiseth defendants acquired new representation and filed the subsequent motion to compel arbitration shortly thereafter. Because the record reasonably supports the district court's finding, we conclude that the district court did not err in determining that the Hoiseth defendants did not waive the right to arbitration.

Even so, the Rays did not argue to the district court and have not shown on appeal that they would be prejudiced if compelled to arbitrate this dispute. "[A] finding of waiver also requires a showing of prejudice to the party opposing arbitration." *Stern*, 937 N.W.2d at 179. "Prejudice can include additional expense and delay." *Id.* But the passage of time alone is insufficient to show prejudice. *Fedie v. Mid-Century Ins. Co.*, 631 N.W.2d 815, 821 (Minn. App. 2001), *rev. denied* (Minn. Oct. 16, 2001). Prejudice can be shown when a party participates in the litigation for a year, answers a complaint, or answers interrogatories. *See Bros. Jurewicz*, 296 N.W.2d at 425, 428; *Anderson v. Twin City Rapid Transit Co.*, 84 N.W.2d 593, 602 (Minn. 1957). Because the Rays did not argue in the district court that they would be prejudiced if compelled to arbitrate and do not explain to us how they would be prejudiced if compelled to arbitrate, we discern no error in the district court's determination regarding waiver.

**Affirmed.**