Argued April 6, reversed April 27, 1955

# SCHWEIGERT *v.* BENEFICIAL STANDARD LIFE INSURANCE COMPANY

282 P. 2d 621

*Stewart M. Whipple* argued the cause for appellant.

*Robert H. Hollister* argued the cause for respondent. 

Before WARNER, Chief Justice, and ROSSMAN, LAUTOURETTE and PERRY, Justices.

WARNER, C. J.

This is an action brought for Marvin S. Schweigert, a minor, by his guardian against the Beneficial Standard Life Insurance Company, a California corporation, to recover certain hospital, surgical and medical benefits alleged to have accrued under the terms of a policy in favor of the plaintiff as the party assured. The jury returned a verdict in favor of plaintiff. Subsequently, the court entered an order notwithstanding the verdict and dismissed plaintiff's complaint. From this judgment plaintiff appeals.

On March 19, 1948, Marvin and the defendant company entered into a contract of insurance whereby the company undertook to pay certain hospital, surgical and medical benefits if Marvin sustained, among other things, bodily injuries while the insurance was in force, subject, however, to the following exception: "This policy does not cover any loss for which benefits are provided in any workmen's compensation or employer's liability law."

While the policy was in force and effect, Marvin was injured, on September 9, 1950; and, as a result,

he incurred medical, surgical and hospital expenses in the amount of $850. In his complaint he alleges this amount is payable to him under the terms of the policy.

At the time of Marvin's accident he was in the employ of C. W. Murphy and Bill McNutt working on a hop baler or hop-baling machine near Harrisburg, Oregon. Prior to the commencement of his action against the insurance company, Marvin sued his employers to recover for the injuries which he sustained. He alleged in that complaint that the work he was engaged in at the time of his injury involved risk or danger within the meaning of the Employers' Liability Law of the state of Oregon (ORS 654.305 to 654.335).

Before the action against Marvin's employers was at issue, a settlement was effected between him and the defendants in that case whereby he received a substantial payment and his case was dismissed.

Although Marvin is inclined to equivocate the true legal character and significance of his complaint against his former employers, we are of the opinion that it was framed for the deliberate purpose of bringing the pleader within the purview of the provisions of the Employers' Liability Law and assume without deciding that the settlement made with him involved an acknowledgment between defendant employers that Marvin's employment did, in fact, involve elements of risk and danger which made the accident amenable to the Employers' Liability Law of this state.

It is the foregoing action which Marvin brought against his employers that the defendant insurance company here invoked as the basis and support for a judgment in favor of the defendant notwithstanding the verdict on the grounds (1) that the court as a matter of law should have instructed the jury that the plaintiff's injuries arose under such conditions that the Employers' Liability Law was applicable, entitling

the insurance company to a directed verdict; and (2) that Marvin was judicially estopped from changing his position from that taken in the case filed against the employers to the position taken in this case, that is, that his recovery by reason of the first case was not a recovery of any benefit under any employers' liability act.

We have only one question to decide: Is the insurance company excused from all liability to the plaintiff under its policy by reason of plaintiff's action for damages brought against his employers under the Employers' Liability Law? The answer to that question depends upon the meaning to be accorded the word "benefits" as that word is employed in the insurance contract.

The company's engagement in return for premiums paid and accepted by it is to maintain the policy in force "against loss due to hospital confinement resulting from bodily injuries sustained during any term of this policy, hereinafter called 'such injury' * * * and for other specific losses the cause of which originates and loss occurs while this policy is in force; all subject to the provisions, conditions and limitations herein contained."

Then follow the most important conditions—four separate parts in which the company outlines the money amounts it will pay to a beneficiary for specified losses resulting from injury or sickness while the policy is in force. Part 1 is headlined "Hospital Residence Indemnity", under which the company covenants to pay up to a certain per diem charge for hospital confinement but not to exceed a maximum number of days. Part 2 relates exclusively to "Hospital *Benefits*" arising out of certain injuries or illnesses peculiar to women. Part 3 is entitled "Miscellaneous Hospital Expense *Benefits*", under which the company agrees to

pay the expenses on seven general items up to a certain maximum amount, all usual or incidental to a hospital confinement such as use of operating room, drugs, dressings, X-rays, etc. Part 4 is captioned "Surgical Operation *Benefits*" and is followed by 185 surgical items which the company agrees to pay within maximum limitations there stipulated for each item of surgical service rendered. (Italics ours.)

Summarizing the overall character of the contract, we can find no better words to express our own thought, as descriptive of the policy's character and scope and the insurance company's intent with reference thereto, than to borrow the words of the insurer when it declares: "This policy provides benefits for hospital confinement, surgical operations and certain other expenses resulting from bodily injury or sickness not covered under any workmen's compensation or employer's liability law to the extent herein limited and provided."

Although not strictly one of the provisions within the boundaries of the conventional contractual language of an insurance contract, the foregoing statement appears twice in bold, black print. The first time it catches the reader's eye is where it appears as a printed endorsement on the back of the policy in 18-point type. Again it appears on the top of the first page of the policy in type of similar size and as a prelude, so to speak, to the contractual language of the policy which follows immediately after. The insurance company's brief freely refers to it as a part of the policy and attempts to employ it in support of its position. Certainly, we are justified, under the circumstances, in assuming that it represents the insurance company's construction of its own contract. It carries significant language to which we will make further reference.

The position of the appellant is that the word "bene-

fit" comprehends a tangible monetary advantage flowing directly to the employee, such as the mandatory benefits disbursed under the Workmen's Compensation Law (ORS 656.002 et seq.). The appellant correctly asserts and the respondent admits that no "benefits" in that sense accrue under the Employers' Liability Law.

The defendant insists that the policy contains no ambiguity and that the use of "benefits", as that word appears in the exception clause, is free from doubt. The insurance company contends that the "benefits" of the Employers' Liability Law comprehend intangible benefits which are conferred upon an injured employee who seeks redress against his employer under that law. The advantage or "benefit" he derives, the insurance company argues, arises from the denial to the employer of the common law defenses of the fellow-servant doctrine, contributory negligence and the assumption of risk, even though, as the company admits, no benefits accrue thereunder as indemnity for hospital, surgical or other expenses incident to the injury of the worker.

As defined by our Code, insurance is a "contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event, whereby the insured or his beneficiary suffers loss or injury." ORS 736.005.

■■ Before proceeding further, it is well to note some rules of construction which are peculiarly applicable to the instant policy. It will be observed that they incline to a liberal construction of such contracts to the favor of the insured rather than the insurer.

As said by Mr. Justice Stone in *Stipcich v. Metropolitan Life Ins. Co.*, 277 US 311, 322, 72 L ed 895, 900, 48 S Ct 512, a case construing a policy issued in Oregon: "* * * But narrow and unreasonable interpretations of clauses in an insurance policy are not favored. They

are prepared by the insurer and if, with equal reason, open to two constructions, that most favorable to the insured will be adopted. * * *''

The language used in a contract of insurance is entitled to a construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment will be allowed to support a view that will protect the insured and prevent forfeiture. *Smith v. Ind. Hosp. Assn.*, 194 Or 525, 533, 242 P2d 592; *Purcell v. Wash. Fid. Nat. Ins. Co.*, 141 Or 98, 103, 16 P2d 639; *Schoeneman v. Hartford Fire Ins. Co.*, 125 Or 571, 577, 267 P 815.

If a clause is susceptible to more than one equally proper construction, we must give the plaintiff the benefit of the most favorable one because the policy was made for his benefit. If the meaning is ambiguous, the doubt must be resolved against the author of the instrument. *Purcell v. Wash. Fid. Nat. Ins. Co.*, 146 Or 475, 485, 30 P2d 742; ORS 42.260.

As said in *Chism v. Schipper*, 51 NJL 1, 16 Atl 316, 318: ''* * * The terms employed are servants, and not masters, of a perspicuous intent; they are to be interpreted so as to subserve, and not to subvert, such intent.''

With the foregoing rules and terms of the policy in mind, and especially as its overall character was so positively and emphatically interpreted by the insurance company, it appears clear to us that the contractual intent and purpose of the company was to indemnify Marvin against losses sustained by him arising from sickness and bodily injury when such losses were for outlays for hospital confinement, surgical operations or other expenses incident to his sickness or injury, if such item of loss were not covered by ''any workmen's compensation or employer's liability law''.

■ Although the term ''benefit'' or ''benefits'' in the popular sense may be broad enough to include such intangible benefits as the denial of certain common law defenses against a complaint of plaintiff brought under the Employers' Liability Law, still if the term ''benefit'' or ''benefits'' is used by the parties in a special or technical sense, it will be so understood and construed. *Boyd v. Olcott et al.,* 102 Or 327, 363, 202 P 431; ORS 42.250. Also see *Rose v. Franklin Surety Co.,* 281 Mass 538, 183 NE 918, 919, construing the Workmen's Compensation Act of that state which includes that part of the Employers' Liability Law of this state denying certain common law defenses to the employer and wherein the word ''benefits'' is construed in the special sense not entirely unlike our construction which follows.

■ In a popular sense the word ''benefits'' has many of the attributes included in respondent's definition taken from Black's Law Dictionary. However, we think that the word ''benefit'', as employed in the instant policy, basically more nearly accords with that part of the definition found in Webster's New International Dictionary 2d ed, reading, ''Pecuniary help in time of sickness''. As so defined and so used in the contested policy, ''benefit'' means pecuniary help in the form of indemnity for losses sustained by the insured in payment of any items of cost which appear in the policy under the headlines of ''Hospital Residence Indemnity'' referred to in Part 1, ''Miscellaneous Hospital Expense Benefits'' as itemized in Part 3 of the contract, and the ''Surgical Operation Benefits'' listed under Part 4.

There is nothing to indicate or suggest that the insurance company intended to employ the word ''benefits'' first in the sense used in the forward part of the policy as monetary indemnity to the insured for his

hospital, surgical and medical costs and then later use it in the exclusion or exception clause with the far broader and more comprehensive meaning urged upon us by the respondent.

■ We think the court is warranted, under the circumstances, in applying the rule that in the absence of anything in the context of a contract clearly indicating a contrary intent, when the same word or phrase is used in different parts of the contract, it will be presumed to be used in the same sense throughout; and where its meaning in one instance is clear, that meaning will be attached to it elsewhere in the contract. 17 CJS 721, Contracts, § 303; 12 Am Jur 761, Contracts, § 236. It is a rule which has been applied to contracts of insurance. 44 CJS 1161, Insurance, § 294.

The foregoing rule giving consistency of meaning to the same words and phrases, when repeated in a contract, has long since had its counterpart in the rules for construing words and phrases when used more than once in statutes. In principle we see no reason why the rule applicable to the construction of statutes is not equally applicable when words and phrases are repetitiously used in contracts. See *School District No. 17 of Sherman County v. Powell,* 203 Or 168, 279 P2d 492, 499; *Holman Tfr. Co. et al., v. Portland et al.,* 196 Or 551, 563, 249 P2d 175, 250 P2d 929; *In re Norton's Estate,* 177 Or 342, 347, 162 P2d 379, 161 ALR 439, and cases there cited.

■ It is our holding that the word "benefits", as used in the clause reading "This policy does not cover any loss for which benefits are provided in any workmen's compensation or employer's liability law", is there employed with the same meaning as it so obviously has where first used in the forepart of the policy, i.e., as monetary indemnities for certain costs incident to hospital, surgical and medical treatment resulting

from bodily injury to the insured, and that the purpose of the foregoing clause was to avoid making duplicate payments for like benefits, if any, which the insured had received or might receive under any workmen's compensation or employers' liability law. There being no monetary benefits or indemnities of any kind provided for under the Employers' Liability Law in this state, it follows that the action brought by Marvin against his employers, even though framed under the Employers' Liability Law, did not operate as a bar to his recovery on the insurance policy in the instant action.

■ We note that the plaintiff, under the authority of ORS 736.325, was properly allowed a judgment in the circuit court for attorneys' fees in the amount of $250. We feel that he merits an additional allowance here but are confounded by what appears as an unfortunate, though unambiguous, wording of the act which tends to minimize the value of its apparent purpose. ORS 736.325 reads:

"Recovery of attorney's fees in action on policy. (1) If settlement is not made within six months from the date proof of loss is filed with an insurance company or fraternal benefit society and a suit or action is brought in any court of this state upon any policy of insurance of any kind or nature, including a policy or certificate issued by a fraternal benefit society as defined in ORS 740.010, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such suit or action, then the plaintiff, in addition to the amount that he may recover, shall be allowed and shall recover as part of his judgment such sum as the court or jury may adjudge to be reasonable as attorney's fees.

"(2) If attorney fees are allowed as herein provided and on appeal to the Supreme Court by the defendant the judgment is affirmed, the Supreme Court shall allow to the respondent such additional

sum as the court shall adjudge reasonable as attorney fees of the respondent on such appeal."

■ The purpose of this section was to "protect an insured who has suffered a loss from annoying and expensive litigation." *Murray v. Firemen's Ins. Co.*, 121 Or 165, 172, 254 P 817; or as was said in *Dolan v. Continental Casualty Co.*, 133 Or 252, 256, 289 P 1057, "When plaintiff was compelled to institute an action against defendant in order to recover the amount due on the policy she became entitled to an attorney's fee". The very same reasons that warranted the allowance of attorney's fees in the cases cited are present here but in this anomalous situation: the defendant here is not the appellant but the respondent. Under subsection (2) of the above code section "attorney fees are allowed [to plaintiff respondent] * * * on appeal to the Supreme Court by the *defendant* [if] the judgment is affirmed". (Italics ours.)

■ Therefore, because the insurance company in this case was successful in overcoming plaintiff's victory in the lower court by the interposition of its motion for judgment n. o. v. in that forum, the expense and annoyance of further litigation and delay were involuntarily thrust upon plaintiff who, to win, had to come to this court in the capacity of an appellant. Unfortunately, however, no allowance of attorneys' fees can be made to the appellant insured, notwithstanding that in this court he triumphed over the respondent insurer.

We venture the opinion that the unusual result now made apparent by the instant case was not within the contemplation of the legislature when it adopted the act now known as ORS 736.325. It is not within our province to construe it contrary to the language employed. We must leave it to the legislature to make the necessary changes if, in fact, it initially intended

to grant this species of relief to successful parties plaintiff in this court but situated as the plaintiff in this case now finds himself—a successful appellant instead of a successful respondent.

The order of the lower court setting aside the verdict in favor of plaintiff and dismissing his complaint is reversed.