**EDUCATION MINNESOTA–
GREENWAY, LOCAL 1330,
et al., Appellants,**

v.

**INDEPENDENT SCHOOL DISTRICT
NO. 316, Coleraine, Minnesota, et
al., Respondents.**

No. A03–684.

Court of Appeals of Minnesota.

Jan. 20, 2004.

Christina L. Clark, Education Minnesota, St. Paul, MN, for appellants.

James E. Knutson, Knutson, Flynn & Deans, P.A., Mendota Heights, MN, for respondents.

Considered and decided by HALBROOKS, Presiding Judge, STONEBURNER, Judge, and PORITSKY, Judge.*

OPINION

STONEBURNER, Judge.

Appellants Education Minnesota Greenway, Local 1330, and Gary Greniger challenge the district court's grant of summary judgment dismissing appellants' claims that respondents Independent School District No. 316, Coleraine, Minnesota, et al., violated the Minnesota Public Employment Labor Relations Act (PELRA), Minn.Stat. §§ 179A.01–179A.25 (2002), by refusing to meet and negotiate in good

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

faith and by failing to provide financial information when requested. Appellants also allege that the district court abused its discretion by failing to strike from the record an unsworn, unverified statement that respondents submitted to the district court. Respondents moved to dismiss part of the appeal, arguing that appellants' brief failed to address one of the grounds for dismissal, appellants failed to exhaust administrative remedies, and the appeal is moot because the parties have now signed a collective bargaining agreement. We affirm in part, reverse in part, and remand, and deny respondent's motion to dismiss.

## FACTS

Appellant Education Minnesota–Greenway, Local 1330, is the exclusive representative under PELRA for a bargaining unit of public school teachers employed by respondent Independent School District No. 316, Coleraine. Appellant Gary Greniger is a teacher and member of the union, and the remaining respondents are the superintendent and school board members of ISD. In this opinion, appellants will be collectively referred to as "the union," and respondents will be collectively referred to as "ISD."

When this lawsuit started in September 2002, the parties were operating under a collective bargaining agreement (CBA) for the two-year term beginning July 1, 1999, and ending June 30, 2001. By law and by its terms, that CBA remained in effect until the parties reached a new agreement.

*See* Minn.Stat. § 179A.20, subd. 6 (2002). The CBA provided for step increases (based on years of service), lane changes (based on educational achievement), credit pay, longevity pay, and payment of 95% of insurance premiums.[1]

In April 2001, the union notified ISD of its intent to begin bargaining for the 2001–2003 CBA, but neither the union nor ISD pursued negotiations until late June 2002, at which time a negotiations session was scheduled for August 7, 2002. The union submitted its written proposal on July 12, 2002. ISD submitted its written proposal at the negotiation session. ISD proposed a retroactive freeze on wages and benefits already paid for the 2001–2002 school year, and, for the 2002–2003 school year, a 5% salary reduction, plus a freeze on step increases and lane changes, and a freeze on ISD's monetary contribution to health insurance premiums. ISD explained that the proposal was necessary because it was in statutory operating debt.

Nine days after the first negotiating session, the superintendent sent a letter to all ISD teachers informing them that, effective at the beginning of the 2002–2003 school year, ISD was unilaterally implementing certain monetary aspects of its bargaining proposal. Specifically, the step increases, lane changes, and contributions to health insurance premiums were frozen and would continue at the dollar amounts paid in the 2001 2002 school year. The union forwarded a demand to bargain over

1. The CBA included a salary grid for teachers based on years of teaching experience (the vertical axis) and extent of graduate education (the horizontal axis). Each year, until they reach the top of the eight-step schedule, teachers who complete a year of service are entitled to a "step" increase and move to the next salary step on the vertical axis for the following year. And, during any given year, teachers who submit timely documentation showing completion of the required amount of additional graduate credits are entitled to a "lane change" increase, and move to the next salary lane on the horizontal axis. The CBA also provided for "credit" pay for teachers who have completed continuing education credits and "longevity" pay (an additional amount of salary after ten, fifteen, twenty, and twenty-five years of service).

the freeze and filed a grievance challenging the freeze as a breach of the CBA.

ISD did not respond to the demand to bargain on the unilateral imposition of the freeze and implemented the freeze. The parties had a second negotiation session on September 13, 2002, and continued to negotiate the 2002–2003 CBA, but ISD kept the freeze in place throughout the negotiations. The union started this lawsuit in late September 2002, alleging two counts of unfair labor practices. Count 1 alleged that the unilateral implementation of the freeze violated ISD's duty to meet and negotiate in good faith. Count 2 related to ISD's failure to provide the union with requested financial information.[2] The parties filed cross-motions for summary judgment on count 1 and ISD moved for summary judgment on count 2. The district court granted ISD's motions and denied the union's motion. This appeal followed. In July 2003, the parties reached agreement on a CBA for the 2001–2003 school years that includes dismissal of the union's grievance. ISD moved to dismiss this appeal, arguing that the union failed to address one of the grounds for summary judgment, the union failed to exhaust administrative remedies, and the case is moot.

## ISSUES

1. Did the district court grant summary judgment in favor of ISD on the basis that the union failed to exhaust its administrative remedies?

2. Is the union's appeal from dismissal of its claim that ISD failed to meet and negotiate in good faith moot after the parties adopted a new collective bargaining agreement?

2. The union also alleged a violation of the open-meeting law, but that count was volun-

3. Did ISD violate Minn.Stat. § 179A.13, subd. 2(5) (2002), and engage in the unfair labor practice of refusing to meet and negotiate in good faith when it unilaterally changed the terms and conditions of the controlling collective bargaining agreement during negotiations?

4. Is there a genuine issue of material of fact as to whether the school district committed an unfair labor practice when it failed to immediately provide the union with requested financial information?

5. Should the unsworn, unverified statement of the Department of Children, Families and Learning's financial manager be stricken from the record?

## ANALYSIS

### I. Administrative remedies issue

ISD argues in its appeal brief that the district court lacked subject-matter jurisdiction even to hear the union's PELRA claims because the union did not exhaust its administrative remedies under the CBA before proceeding to district court. ISD, in its motion to dismiss the union's appeal from dismissal of count I, asserts that the district court dismissed count I for failure to exhaust administrative remedies, and that the union's failure to address this ground for dismissal in its appellate brief requires this court to dismiss that part of the union's appeal.

The union, in its reply brief, contends that the district court decided the PELRA claims on the merits and did not dismiss count 1 based on failure to exhaust administrative remedies. We agree.

■ The district court dismissed count 1, the union's claim that ISD failed to meet and negotiate in good faith, on the merits,

tarily dismissed.

and did not dismiss the claim based on lack of jurisdiction for failure to exhaust administrative remedies. The district court noted only that the issue of whether ISD's unilateral freeze also violated the CBA must be resolved by the grievance process set out in the CBA. The existence of a grievance procedure under a CBA does not deprive the district court of subject-matter jurisdiction to decide whether the same conduct constituted a violation of PELRA. *See Edina Educ. Ass'n v. Bd. of Educ. of Indep. Sch. Dist. No. 273*, 562 N.W.2d 306, 310 (Minn.App.1997) (holding that, although the CBA provided concurrent grievance procedure, plaintiff was not required to exhaust that remedy because the cause of action did not derive solely from contract but also derived from state law), *review denied* (Minn. June 11, 1997).

Because the district court did not expressly rule on the exhaustion of administrative remedies issue, ISD appropriately raised the issue on appeal as an alternate ground for affirmance. The union's response to ISD's assertion of this alternate ground on appeal was properly raised in its reply brief. Therefore, we deny ISD's motion to dismiss the union's appeal from dismissal of count 1 based on the union's failure to address this issue in its brief on appeal.

## II. Mootness

■ ISD contends that no actual controversy remains as to count 1, failure to meet and negotiate in good faith, because the parties signed a CBA on July 16, 2003, resolving all issues, including wages and benefits for the 2001–2003 school years.

■ The general rule is that an appeal should be dismissed as moot when, pending appeal, an event occurs that makes a decision on the merits unnecessary or an award of effective relief impossible. *In re Application of Minnegasco*,

565 N.W.2d 706, 710 (Minn.1997). To determine whether a live, resolvable controversy exists, the mootness doctrine suggests that a comparison be made between the relief demanded and the circumstances of the case at the time of decision. *Id.*

The union notes that its prayer for relief in the complaint requests a judgment declaring that ISD has committed unfair labor practices in violation of PELRA and an injunction to prevent ISD from committing such practices in the future. The union argues that, even though the grievance regarding the current CBA has been resolved, there is still a justiciable issue regarding whether ISD's actions violated PELRA and, without an appellate determination of this issue, the controversy will repeat itself in future negotiations.

■ An appeal is not moot where the issue raised is capable of repetition yet evades review or where collateral consequences attach to the judgment. *In re McCaskill*, 603 N.W.2d 326, 327 (Minn. 1999). An issue is capable of repetition yet evades review if it does not remain a live controversy until the completion of appellate review but, due to its nature, may reoccur. *Id.*

If the union's appeal is dismissed as moot and ISD takes similar unilateral action during future negotiations, the union could again seek an injunction under PELRA. An action may be brought for injunctive relief and for damages caused by an unfair labor practice in the district court of the county in which the practice is alleged to have occurred. Minn.Stat. § 179A.13, subd. 1 (2002). But, as in this case, contract negotiations could be completed before that action is decided on appeal, giving rise to another dismissal of the claim as moot.

■ The supreme court has stated that the mootness doctrine is a "flexible discre-

tionary doctrine, not a mechanical rule that is invoked automatically." *State v. Rud,* 359 N.W.2d 573, 576 (Minn.1984). And the reviewing court has discretion to decide issues that are technically moot when the issue is functionally justiciable and one of public importance and state-wide significance that should be decided immediately. *Jasper v. Comm'r of Pub. Safety,* 642 N.W.2d 435, 439 (Minn.2002).

Because (1) the union sought injunctive relief; (2) the action of ISD can be repeated; (3) the issue is one of statewide significance; and (4) the mootness doctrine is flexible, we conclude that the union's claims of PELRA violations should be reviewed even though there are no current collective bargaining issues between the parties. ISD's motion to dismiss the appeal of dismissal of count 1 as moot is denied. And because ISD has not shown a substantive basis for an award of attorney fees incurred in bringing the motion to dismiss, ISD's request for such an award is also denied.

## III. Unilateral change in terms and conditions of employment was unfair labor practice

On appeal from summary judgment, this court must determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). The parties agree that there are no issues of material fact surrounding ISD's unilateral action of changing the terms and conditions of employment during negotiations. When summary judgment is granted based on the application of a statute to undisputed facts, the result is a legal conclusion, which this court reviews de novo. *Lefto v. Hoggsbreath Enters., Inc.,* 581 N.W.2d 855, 856 (Minn.1998).

The legal issue to be resolved is whether ISD engaged in an unfair labor practice under Minn.Stat. § 179A.13, subd. 2(5) (2002), when it unilaterally froze wages and benefits under the existing CBA after meeting only one time with the union, despite continuing to subsequently participate in negotiations. A public employer has engaged in an unfair labor practice by "refusing to meet and negotiate in good faith with the exclusive representative of its employees in an appropriate unit." Minn.Stat. § 179A.13, subd. 2(5).

■■ A unilateral change by an employer in the terms and conditions of employment is a prima facie violation of the employees' collective bargaining rights. *Foley Educ. Ass'n v. Indep. Sch. Dist. No. 51,* 353 N.W.2d 917, 920–21 (Minn.1984) citing *NLRB v. Katz,* 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962).[3] A unilateral change is not, however, per se an unfair labor practice. *Id.* at 921. "The crucial inquiry in such event is whether the employer's unilateral action deprived the union of its right to negotiate a subject of mandatory bargaining." *Id.* If the employer gave the union an opportunity to bargain, or if the CBA authorized the change, there is no bad faith refusal to bargain on the part of the employer. *Id.* The CBA did not authorize the change, but ISD argues that, because it continued to negotiate about the new contract, it did not commit an unfair labor practice. And ISD asserts that the Minnesota law that requires structurally balanced school budgets insulates it from having committed an unfair labor practice. *See* Minn.Stat.

---

**3.** The Minnesota Supreme Court has recognized that "[i]n interpreting provisions of the PELRA, it is often instructive to refer to decisions interpreting the National Labor Relations Act (NLRA), 29 U.S.C.A. §§ 151 to 168." *Int'l Union of Operating Eng'rs, Local No. 49 v. City of Minneapolis,* 305 Minn. 364, 233 N.W.2d 748, 752 (1975) (citation omitted).

§ 123B.749 (2002). We first address ISD's arguments relating to the structural balance law.

**a. The structural balance law and the duty to meet and negotiate**

Minn.Stat. Ch. 123B (2002) sets out the powers and duties of school districts, including managing operating debt. Minn. Stat. §§ 123B.75–.83. A school district's operating debt is defined as "the net negative undesignated fund balance in all school district funds other than capital expenditure, building construction, debt service, and trust and agency." Minn.Stat. § 123B.81, subd. 1. A district is in statutory operating debt "[i]f the amount of the operating debt is more than 2–1/2 percent of the most recent fiscal year's expenditure amount for the funds" listed in subdivision 1. *Id.*, subd. 2. A school district must eliminate any statutory debt. *Id.*, subd. 4. Eliminating statutory operating debt requires a school district to submit a special operating plan to the Commissioner of the Department of Children, Families and Learning (DCFL) and have it approved. Minn.Stat. § 123B.83, subd. 4.

ISD had statutory operating debt for several years, including at the beginning of the 2002–2003 school year, but the school board did not approve a five-year special operating plan to submit to DCFL until September 18, 2002. The record does not reflect if, or when, DCFL approved the plan.

██ Chapter 123B provides that:

(a) Prior to approving a collective bargaining agreement . . ., a school board must determine by board resolution that the proposed agreement will not cause structural imbalance in the district's budget during the periods of the agreement.

(b) A school board may only determine that an agreement will not cause struc-

tural imbalance if expenditures will not exceed available funds[;]

(c) All projections and calculations required by this section must be made available to the public prior to and at the meeting where the resolution is adopted in a manner consistent with state law on public notice and access to public data.

. . . .

(g) Compliance with this section by itself is not an unfair labor practice under section 179A.13, subdivision 2.

Minn.Stat. § 123B.749. This section was added to the statutes in 2001 (2001 Minn. Laws, 1st Spec. Sess, ch. 6, art. 2, § 61) and has not been interpreted in relation to section 179A.13, subd. 2, which defines unfair labor practices. ISD asserts that it did not engage in an unfair labor practice because it imposed the unilateral freeze in order to eliminate its statutory operating debt. But under the facts of this case, we conclude that Minn.Stat. § 123B.749(g) does not protect ISD from an unfair labor practice charge because ISD had not reached the stage of having a proposed collective bargaining agreement to present to the school board, and nothing in section 123B.749 excuses a public employer from its statutory duty to meet and negotiate in good faith.

ISD complied with none of the procedural aspects of the statute, and the plain language of section 123B.749(g) requires a school district to comply with the entire section in order to claim that compliance is not an unfair labor practice. Although a school district must balance its budget or risk a decrease or loss in state funding, it is not required to balance the budget by the means employed in this case. We reject ISD's reliance on section 123B.749(g) to justify its act of unilaterally changing and implementing the terms and

conditions of employment of an existing CBA at the beginning of negotiations.

### b. Did ISD refuse to meet and negotiate in good faith.

No Minnesota cases have squarely addressed the issue of whether a unilateral freeze of wages and benefits provided in an existing CBA is an unfair labor practice when the employer continues to meet and negotiate on a future contract. The Minnesota Supreme Court, however, has recognized the reasoning of the United States Supreme Court that, "even in the absence of subjective bad faith, an employer's unilateral change of a term and condition of employment circumvents the statutory obligation to bargain collectively ... in much the same manner as a flat refusal to bargain." *Foley*, 353 N.W.2d at 921 (citing *Katz*, 369 U.S. at 743, 82 S.Ct. at 1111).

*Foley* involved, in part, an alleged unfair labor practice for a unilateral change in teaching assignments. 353 N.W.2d at 919. The supreme court held that the union in that case waived its right to demand negotiation on the unilateral change by failing to demand that the school district meet and negotiate prior to implementation of the change. *Id.* at 922. In the case before us, however, the union immediately demanded bargaining over the freeze, and ISD ignored that demand. We rely on the reasoning in *Katz* and conclude that ISD's unilateral change in the terms and conditions of employment in this case, coupled with its failure to respond to the union's demand to bargain regarding the freeze, constituted a refusal to bargain. *See Katz*, 369 U.S. at 743, 82 S.Ct. at 1111.

We are further persuaded by the reasoning of the New Jersey Supreme Court in a case very similar to the case before us. In *Galloway Township Bd. of Educ. v.* *Galloway Township Educ. Ass'n*, 78 N.J. 25, 393 A.2d 218 (1978), the New Jersey Supreme Court determined that the failure of a school board to pay increments at the beginning of a school year in conformity with the schedule set forth for the prior year amounted to a refusal to bargain and was an unfair labor practice. In that case, the parties continued to negotiate and reached a new agreement before the matter reached the supreme court. *Id.* at 221. After determining that the issue was not moot, the New Jersey Supreme Court concluded that the school board's unilateral act constituted an unlawful refusal to negotiate in good faith and an unlawful interference with its employees' exercise of their statutory rights in violation of New Jersey's version of PELRA. *Id.* at 232. Relying in part on federal labor law, to the extent applicable, as a guide in unfair labor practice cases in the public sector, the New Jersey Supreme Court stated that a unilateral change prior to impasse is unlawful because of its coercive effect on employees and because of its chilling effect on employees' statutory right to bargain:

A settled principle of private sector labor law under the LMRA is that an employer's unilateral alteration of the prevailing terms and conditions of employment during the course of collective bargaining concerning the affected conditions constitutes an unlawful refusal to bargain, since such unilateral action is a circumvention of the statutory duty to bargain. .... "Unilateral" in this regard refers to a change in the employment conditions implemented without prior negotiations to impasse with the employee representative concerning the issue. The basis of the rule prohibiting unilateral changes by an employer during negotiations is the recognition of the importance of maintaining the then-prevailing terms and conditions of employ-

ment during this delicate period until new terms and conditions are arrived at by agreement. Unilateral changes disruptive of this Status quo are unlawful because they frustrate the "statutory objective of establishing working conditions through bargaining." . . . .

. . . .

Indisputably, the amount of an employee's compensation is an important condition of his employment. If a scheduled annual step increment in an employee's salary is an "existing rul[e] governing working conditions," the unilateral denial of that increment would constitute a modification thereof without the negotiation mandated by [statute] and would thus violate [that statute]. Such conduct by a public employer would also have the effect of coercing its employees in their exercise of the organizational rights guaranteed them by the Act because of its inherent repudiation of and chilling effect on the exercise of their statutory right to have such issues negotiated on their behalf by their majority representative.

*Id.* at 230 (citing *Katz,* 369 U.S. at 743–47, 82 S.Ct. 1107; *NLRB v. J.P. Stevens & Co., Inc., Gulistan Div.,* 538 F.2d 1152, 1162 (5th Cir.1976)).

We find the New Jersey Supreme Court's reasoning persuasive in the case before us. The union and ISD were not at impasse when ISD unilaterally imposed a freeze on wages and benefits provided under the existing CBA. The union immediately demanded negotiations about the freeze. ISD presents no explanation of why the freeze was not subject to bargaining, or why it ignored the union's demand to negotiate the freeze. The union was placed in the position of having to bargain for wages and benefits that were already in place. We conclude that ISD's unilateral freeze on wages and benefits violated its

statutory duty to meet and negotiate in good faith under PELRA and therefore constituted an unfair labor practice. We remand for the district court to make a determination on the union's request for injunctive relief.

## IV. No material fact question on production of documents

The union alleged in count 2 of the complaint that ISD violated Minn.Stat. § 179A.13, subd. 2(11) (2002), which prohibits public employers from "refusing to provide . . . all information pertaining to the public employer's budget." Because all requested data had been provided to the union before initiation of this lawsuit, the district court granted summary judgment to ISD on this claim.

Under the [National Labor Relations Act], the duty to bargain collectively is defined as "the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment." . . . The obligation to meet and confer in good faith includes the obligation to honor a good-faith request by a union to furnish the union with the information necessary to the union's intelligent functioning as a collective bargaining agent. If the employer refuses to supply requested information and that refusal materially hampers the union, the employer is guilty of an unfair labor practice.

*Int'l Union of Operating Eng'rs, Local 49,* 233 N.W.2d at 752.

In this case, the union argues that there are "fact issues [that] must be developed before the court can fairly determine whether [ISD] met its obligations." The union asserts that it began requesting financial data near the beginning of 2002

and that ISD's affidavits and documents show that it did not provide all of the requested information until several months after the request. The union claims that "these unresolved factual disputes show that [ISD] has failed to show the absence of an issue of material fact." Despite the union's numerous references to material fact disputes, viewing the record in the light most favorable to the union, it is undisputed that all of the information requested was provided before the union brought this action. The parties have now entered into a CBA and there is no evidence in the record that the delay in production of the information materially hampered the union. We conclude that the district court did not err by granting summary judgment to ISD on the union's claim that delay in production of requested information constituted an unfair labor practice.

## V. Union's request to strike the unsworn statement

■ ISD submitted an unverified and unsworn statement of Charles Speiker, Financial Manager of DCFL, to the district court in support of its motion for partial summary judgment. In the union's memorandum in district court in response to ISD's motion for dismissal and partial summary judgment, the union asked the district court to strike this document from the record. The district court, however, failed to address the union's request in the order now being appealed. And it is not apparent from the record whether the district court even considered the statement. On appeal, we will reverse the district court's evidentiary ruling only if we find a clear abuse of discretion. *State Farm Fire & Cas. Co. v. Wicka*, 461 N.W.2d 236, 241 (Minn.App.1990). On a motion for summary judgment, the district court may consider only the pleadings, depositions, answers to interrogatories, admissions on

file, and affidavits. Minn. R. Civ. P. 56.03; *Kay v. Fairview Riverside Hosp.*, 531 N.W.2d 517, 520 (Minn.App.1995), *review denied* (Minn. July 20, 1995). Because the Speiker statement is not in the form of a deposition or affidavit, the district court abused its discretion by failing to strike the Speiker statement.

### DECISION

The union's claim that ISD committed an unfair labor practice under PELRA by unilaterally freezing wages and benefits after one negotiation session is subject to the jurisdiction of the court and is not moot despite the parties' subsequent successful negotiation of a collective bargaining agreement. Under the facts of this case, the unilateral freeze on wages and benefits due under the existing contract at the beginning of negotiations for a new contract was a refusal to meet and negotiate in good faith, which constitutes an unfair labor practice under PELRA. On remand, the district court shall enter judgment in favor of the union on count 1 of the complaint and consider the union's request for injunctive relief. The district court did not err by granting summary judgment to ISD on the union's claim of an unfair labor practice by refusing to provide financial information on the union's request because ISD provided the requested information. The district court abused its discretion by failing to strike the Speiker statement because a statement that is not in the form of an affidavit or deposition cannot be considered in connection with a summary judgment motion and should have been stricken from the record.

**Affirmed in part, reversed in part, and remanded; motion to dismiss denied.**