**WEST ST. PAUL FEDERATION OF TEACHERS, Respondent,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 197, West St. Paul, Minnesota, Appellant.**

**No. A05–1020.**

Court of Appeals of Minnesota.

April 18, 2006.

Considered and decided by DIETZEN, Presiding Judge; WRIGHT, Judge; and WORKE, Judge.

## OPINION

DIETZEN, Judge.

Appellant challenges the district court's final judgment granting summary judgment in favor of respondent on liability and awarding damages to respondent; and its denial of appellant's motion for amended findings. Appellant argues that (1) it did not violate Minn.Stat. § 471.6161, subd. 5, because it did not reduce the "aggregate value of benefits" provided by the group health-insurance plan; (2) it did not commit an unfair labor practice under the Public Employee Labor Relations Act (PELRA); (3) section 471.6161, subdivision 5, is an unconstitutional delegation of legislative power; (4) the unfair-labor-practice claim was arbitrable under the collective-bargaining agreement; and (5) the proper measure of damages is out-of-pocket losses incurred by respondent's members. We affirm.

## FACTS

Respondent West St. Paul Federation of Teachers is the exclusive bargaining representative for public-school teachers employed by appellant West St. Paul Independent School District. The parties are signatories to a collective-bargaining agreement (CBA).

In May 2003, the parties were negotiating terms for a new 2003–05 CBA. The existing CBA required appellant to provide group health insurance to the teachers. The group health-insurance policy offered by appellant had two health-care coverages to choose from: Medica Elect (Elect) and Medica Choice (Choice). Although the benefit structures for the coverages were the same, Choice cost more because the

Harley M. Ogata, Debra M. Corhouse, Education Minnesota, St. Paul, MN, for respondent.

Bryan N. Smith, J. Dennis O'Brien, Littler Mendelson, P.C., Minneapolis, MN, for appellant.

insured had an almost unlimited provider network. "Providers" are health-care professionals and facilities offering health services, including hospitals, physicians, skilled-nursing facilities, and pharmacies. A "provider network" is a group of providers that agrees to provide services to an insurance carrier's customers for less than their usual fees. If an insured obtains the services of a non-network provider, that insured will incur greater out-of-pocket costs because the fees for services will not be subject to the discounted rate.

In the spring of 2003, appellant faced a projected 11.3% increase in premium rates for the existing health-care-benefit structure. As a result, appellant requested that its insurance committee explore options to control costs. Following its review, the majority of the insurance committee recommended an option that would limit the amount of the increase to 5%. Under this option, Elect was unchanged and maintained its benefit structure with the same limited provider network, but Choice changed considerably, including an increase in out-of-pocket maximums from $1,000 to $1,200; an increase in office-visit and emergency-care co-pays from $10 to $15; and a decrease in inpatient hospitalization coverage from 100% to 80%. To avoid the increased out-of-pocket expenses, members enrolled in the Choice coverage could switch to Elect coverage with its more limited provider network. Following a public hearing, the school board approved the recommended option; and modified the Choice health-insurance coverage available to teachers covered by the CBA.

Respondent brought suit against appellant, alleging that appellant's unilateral change of the Choice coverage violated Minn.Stat. § 471.6161, subd. 5, and constituted an unfair labor practice under PEL-RA. Subsequently, both parties moved for summary judgment. The district court granted partial summary judgment for respondent, denied appellant's motion, and ordered the matter to proceed to trial on the issue of damages.

At trial, appellant argued that the appropriate measure of damages was the out-of-pocket losses incurred by respondent's members as a result of the change in the Choice coverage. Respondent argued that damages should be measured by the difference in premiums paid by appellant as a result of the change in Choice. Respondent offered the testimony of John Stiglich, an expert in health-insurance actuarial statistics. Stiglich testified that appellant's out-of-pocket measure of damages was "not actuarially sound" and that a premium-differential measure was the best measure of damages. Two teachers also testified that they remained with Choice coverage despite increased costs because their spouses, one of whom was receiving cancer treatments and the other of whom was pregnant, would have been forced to change physicians under Elect.

Following trial, the district court awarded respondent "an amount in damages equal to the difference between what [appellant] would have paid in premiums under the group health plan prior to the unlawful change in the plan and the premiums it did pay for the revised plan." Subsequently, appellant moved for amended findings and conclusions of law and that the district court make additional findings of fact. The district court denied appellant's motion. This appeal follows.

## ISSUES

I. Did the district court err by granting summary judgment in favor of respondent on the claim that appellant violated Minn.Stat. § 471.6161, subd. 5?

II. Did the district court err by granting summary judgment in favor of respon-

dent on the claim that appellant committed an unfair labor practice under PELRA?

III. Is Minn.Stat. § 471.6161, subd. 5, an unconstitutional delegation of legislative power?

IV. Did the district court err by declining to compel the parties to arbitration?

V. Did the district court abuse its discretion in awarding damages to respondent?

## ANALYSIS

### I.

■■■ When summary judgment is granted based on the application of a statute to undisputed facts, the result is a legal conclusion, which the court reviews de novo. *Educ. Minnesota–Greenway, Local 1330 v. Indep. Sch. Dist. No. 316,* 673 N.W.2d 843 (Minn.App.2004), *review denied* (Minn. Apr. 20, 2004). "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Minn. Ins. Guar. Ass'n v. Integra Telecom, Inc.,* 697 N.W.2d 223, 226 (Minn.App.2005), *review denied* (Minn. Aug. 16, 2005). Words and phrases lacking express statutory definition are construed according to their "common and approved usage." Minn.Stat. § 645.08(1) (2004). "[W]ell-established rules of statutory construction require this court to harmonize apparently conflicting provisions where possible." *Septran, Inc. v. Indep. Sch. Dist. No. 271,* 555 N.W.2d 915, 919 (Minn.App.1996), *review denied* (Minn. Feb. 26, 1997).

### A. Statutory Interpretation of Section 471.6161, subdivision 5

Minn.Stat. § 471.6161, subd. 5, states: "The aggregate value of benefits provided by a group insurance contract for employees covered by a collective bargaining agreement shall not be reduced, unless the public employer and exclusive representative of the employees of an appropriate bargaining unit ... agree to a reduction in benefits." The phrase "aggregate value of benefits" is not defined by the statute.

Essentially, appellant makes two arguments. First, appellant argues that the statute does not prohibit it from reducing the value of the benefits of Choice coverage provided that it does not reduce the value of the benefits of Elect. We disagree.

■■■ The plain and ordinary meaning of the phrase "aggregate value" is the whole or total amount of the goods or services considered to be a fair equivalent or price for something else. *The American Heritage Dictionary* 33, 1900 (4th ed. 2000). Appellant suggests that we should simply compare the aggregate value of Choice with Elect, and because the value of Elect has not been "reduced," conclude that appellant did not violate the statute. But the "benefit" at issue is the health-care insurance coverage available under the CBA, which includes both Medica Choice and Elect. Thus, the proper method for determining whether there has been a reduction in the aggregate value of the benefits is to compare the value of the health-care insurance coverage under both Choice and Elect before appellant changed the coverage with the value of the coverage after the change. Here, it is undisputed that there has been a reduction in the benefits under the Choice coverage. Teachers with Choice coverage now incur greater out-of-pocket expenses for the same health-care coverage. Consequently, it is axiomatic that appellant reduced the aggregate value of the health-care coverage when it reduced the value of the Choice coverage.

Second, appellant argues that the term "benefits" in Minn.Stat. § 471.6161, subd. 5, extends only to benefits that have a tangible monetary value. It suggests that respondent's members can switch from Choice to Elect without incurring additional out-of-pocket expenses, and therefore, there is no reduction in the value of the benefits. Respondent argues, and the district court agreed, that its members who switch from Choice to Elect would have a smaller network from which to choose providers and that this change constitutes a reduction in the value of the benefits.

Appellant suggests that the definition of "benefit" is "a payment or series of payments to one in need." But we discern no legislative intent to interpret the term "benefit" as narrowly as appellant does. The common meaning of benefit is: "1a. Something that promotes or enhances well-being; an advantage ... b. Help; aid. 2. A payment made or an entitlement available in accordance with a wage agreement, an insurance policy, or a public assistance program." *The American Heritage Dictionary, supra* 168. Thus, "benefit" is not limited to tangible, monetary benefits, but also includes non-monetary benefits that promote or enhance well-being, or constitute an advantage. Certainly, it is an advantage to respondent's members to have a larger provider network from which to choose a health-care provider. The physician-patient relationship is a professional relationship built on trust and confidence, particularly in light of the personal and often sensitive na-

ture of health-care issues. Here, it is undisputed that switching health-care coverage from Choice to Elect will result in a more restricted provider network available to respondent's members; and, for some, the change in coverage may require a change in their physicians. Consequently, we conclude that the term "benefit" in Minn.Stat. § 471.6161, subd. 5, includes the non-monetary benefit of retaining the choice of a provider network available under Choice without incurring additional expense.

Appellant nonetheless relies on language in a Minnesota Attorney General's opinion discussing the predecessor to Minn.Stat. § 471.6161, subd. 5, to support its position. Op. Att'y Gen. 59a–25 (Dec. 15, 1987). Attorney general's opinions, however, are not binding on this court. *Billigmeier v. Hennepin County,* 428 N.W.2d 79, 81–82 (Minn.1988).[1] Also, the attorney general's opinion does not reach the issue of whether the term "benefits" includes non-monetary benefits. The opinion states, " 'Benefits' at a minimum means monetary indemnities available under an insurance policy." But the phrase "at a minimum" necessarily implies that the term "benefits" is broader than "monetary indemnities."

Appellant further argues that its definition of "benefit" is supported by an Oregon case that defines benefit as "pecuniary help in time of sickness." *Schweigert v. Beneficial Standard Life Ins. Co.,* 204 Or. 294, 302–03, 282 P.2d 621, 625 (Or.1955). But in *Schweigert,* the Oregon Supreme

---

1. In some limited and carefully delineated situations, the legislature has by statute expressly given attorney general's opinions the force of law unless and until a court of competent jurisdiction overrules them. *See N. States Power Co. v. Williams,* 343 N.W.2d 627, 632 (Minn.1984). Statutes granting attorney general's opinions the force of law include those regulating certain school and tax matters. *In re Admonition No. 99–42,* 621 N.W.2d 240, 244 n. 4 (Minn.2001); *see also* Minn.Stat. §§ 8.07, 270.09 (2004). Because the legislature has not given attorney general opinions regarding public-employee matters the force of law, we are not bound by attorney general's opinions in this case.

Court was interpreting the meaning of "benefit" within a particular insurance contract and arrived at this definition based on the consistent usage of the term throughout the contract, rather than on common usage of the word. *Id.* at 626. In fact, the *Schweigert* court acknowledged that the term "benefits" in other contexts "may be broad enough to include such intangible benefits." *Id.* at 302, 282 P.2d at 625.

### B. Terms of Collective–Bargaining Agreement

█ Appellant further argues that article VIII, section 1, of the CBA reserved to it the right to unilaterally change the Choice coverage without bargaining with respondent, and therefore, there was no violation of Minn.Stat. § 471.6161, subd. 5. Respondent argues that appellant failed to raise this argument below; and, thus, is barred from raising it on appeal.

█ Generally, we will not consider matters not argued and considered by the district court. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). Here, appellant did not raise respondent's alleged waiver of rights under the CBA in its answer or motion for summary judgment. In its posttrial motion, appellant referred to the effect of the CBA on respondent's claims, but only addressed the grievance procedure and did not refer to article VIII, section 1. Thus, appellant is barred from raising this argument on appeal. Regardless, appellant's argument lacks merit.

█ Minnesota courts have recognized that "in order to waive a statutory right to negotiate on a mandatory subject of bargaining, a union must express its intention to waive in 'clear and unmistakable language.'" *Law Enforcement Labor Servs., Inc. v. Sherburne County,* 695 N.W.2d 630, 638 (Minn.App.2005).

Article VIII, section 1 of the parties' CBA states: "Selection of Carrier: The School Board reserves the right to select the insurance carrier and the policy for any group insurance coverage provided for the teacher." Appellant argues that by agreeing to the language of the CBA, respondent waived its consent rights under the statute. We disagree. Waiver of respondent's consent rights under section 471.6161, subdivision 5, must be "clear and unmistakable." *Law Enforcement Labor,* 695 N.W.2d at 638. We do not discern an intent by respondent in article VIII, section 1, to waive its consent rights.

Further, the provisions of the CBA are consistent with the statute. Appellant bargained for the right to choose the insurance carrier and the policy it wished to provide to respondent teachers. But reserving the right to select the insurance carrier and the policy does not, ipso facto, confer the right to reduce insurance benefits without the consent required by the statute. Here, respondent has the right to select the insurance carrier and policy so long as there is no reduction in benefits.

### C. Conflict Between Minn.Stat. § 471.6161, subds. 4 and 5

Appellant further argues that interpreting the term "benefits" under subdivision 5 to include non-monetary benefits puts that subdivision in direct conflict with subdivision 4 of section 471.6161. Specifically, appellant contends that subdivision 4 allows it to solicit proposals from other insurance carriers every five years and that the district court's interpretation of subdivision 5 would not allow it to select a different insurance carrier unless it offered the exact coverage as previously provided.

█ Section 471.6161, subdivision 4, provides that "[g]roup insurance contracts may not exceed five years in length, including all extensions. The political subdi-

vision shall request proposals for coverage at least once every 60 months." The language of subdivision 4 simply requires a school district to solicit proposals from insurance carriers every five years; and subdivision 5 prohibits a school district from reducing the "aggregate value of benefits" without the consent of respondent.

We see no conflict between subdivisions 4 and 5. Read together, appellant is required to solicit proposals every five years but is prohibited from reducing benefits without the consent of respondent. If appellant receives an insurance proposal that maintains the "aggregate value of benefits," it has the right under the statute to change the insurance carrier and policy subject to any other limitations set forth in the CBA. Consequently, we conclude that defining "benefits" to include non-monetary benefits, such as a choice of provider does not create a conflict between subdivisions 4 and 5 of section 471.6161.

## II.

Appellant argues that the district court erred by granting summary judgment on the unfair-labor-practice charge because respondent waived its right to bargain over health insurance in the CBA. Respondent contends that health insurance is a mandatory subject of bargaining and that it did not waive its right to bargain over that subject.

Under PELRA, a public employer commits an unfair labor practice when the employer refuses "to meet and negotiate in good faith" over the terms and conditions of employment with the exclusive representative of its employees. Minn. Stat. § 179A.13, subd. 2(5) (2004); *see also Am. Fed. of State, County, Mun. Employees, Council # 14 v. City of St. Paul,* 533 N.W.2d 623, 627 (Minn.App. 1995). PELRA defines "terms and conditions of employment" as follows: "[T]he hours of employment, the compensation therefore including fringe benefits except retirement contributions or benefits other than employer payment of, or contributions to, premiums for group insurance coverage of retired employees or severance pay, and the employer's personnel policies affecting the working conditions of the employees." Minn.Stat. § 179A.03, subd. 19 (2004).

A unilateral change by an employer in the terms and conditions of employment is a prima facie violation of the employees' collective-bargaining rights. *Greenway,* 673 N.W.2d at 849. A unilateral change is not per se an unfair labor practice. *Id.* "The crucial inquiry in such event is whether the employer's unilateral action deprived the union of its right to negotiate a subject of mandatory bargaining." *Foley Educ. Ass'n v. Indep. Sch. Dist. No. 51,* 353 N.W.2d 917, 921 (Minn. 1984). "[E]ven in the absence of subjective bad faith, an employer's unilateral change of a term and condition of employment circumvents the statutory obligation to bargain collectively ... in much the same manner as a flat refusal to bargain." *Id.*

Appellant does not dispute the material facts that it unilaterally changed the Choice coverage and that health insurance is a "fringe benefit" included under "terms and conditions" of employment. In fact, appellant appears to concede these points and relies solely on its argument that respondent waived its statutory right to bargain over group health insurance in the CBA.

We have previously concluded that appellant's reservation-of-rights argument is without merit because it did not raise the argument before the district court. We also concluded that the language of article VIII, section 1, of the CBA was not a

"clear and unmistakable" waiver as required under Minnesota law. Consequently, the district court did not err in granting summary judgment in favor of respondent on its PELRA claim.

### III.

Third, appellant argues that Minn.Stat. § 471.6161, subdivision 5, unconstitutionally delegates to respondent, a private party, the authority to determine when a state-funded school district can reduce its benefits without providing sufficient guidance as to the proper exercise of that authority and without making respondent accountable to the public for exercising such authority.

When a statute's constitutionality is challenged, this court reviews the challenge de novo as a question of law. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993). Appellate courts presume Minnesota statutes are constitutional and exercise the power to declare a statute unconstitutional with extreme caution and only when necessary. *Associated Builders & Contractors v. Ventura*, 610 N.W.2d 293, 299 (Minn. 2000).

The non-delegation doctrine has been articulated as follows: "[T]he legislature—except where expressly authorized by the constitution ... cannot delegate purely legislative power to any other body, person, board, or commission." *Lee v. Delmont*, 228 Minn. 101, 112, 36 N.W.2d 530, 538 (1949). "Purely legislative power" is the "authority to make a complete law—complete as to the time it shall take effect and as to whom it shall apply—and to determine the expediency of its enactment." *Rukavina v. Pawlenty*, 684 N.W.2d 525, 535 (Minn.App.2004), *review denied* (Minn. Oct. 19, 2004). The non-delegation doctrine applies to the Minnesota legislature through the separation-of-powers provision of our state constitution. Minn. Const. art. III, § 1; *see also Rukavina*, 684 N.W.2d at 535. When the legislature has delegated its powers to an administrative or executive agency, the underlying policy consideration is whether safeguards exist to protect against uncontrolled discretionary power. *Hubbard Broadcasting, Inc. v. Metro. Sports Facilities Comm'n*, 381 N.W.2d 842, 847 (Minn. 1986).

"Although purely legislative power cannot be delegated, the legislature may authorize others to do things (insofar as the doing involves powers which are not exclusively legislative) which it might properly, but cannot conveniently or advantageously, do itself." *Lee*, 228 Minn. at 112–13, 36 N.W.2d at 538. There is a distinction, therefore, "between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." *Remington Arms Co. v. G.E.M. of St. Louis, Inc.*, 257 Minn. 562, 569, 102 N.W.2d 528, 534 (Minn. 1960) (citation omitted).

Appellant relies on *Remington*, 257 Minn. 562, 102 N.W.2d 528, and *State ex rel. Foster v. City of Minneapolis*, 255 Minn. 249, 252–53, 97 N.W.2d 273, 275 (Minn.1959), to support its argument. In *Remington*, the Minnesota Supreme Court struck down a non-signer provision of the Minnesota Fair Trade Act that allowed private manufacturers to set minimum resale prices on certain goods to be binding on all retailers. 257 Minn. at 565, 102 N.W.2d at 531. The supreme court noted, "[w]e have never understood that the legislature may enact an open-end type of regulation which will give to a private party the arbitrary right to exercise an option to

make a law operative on his own terms." *Id.* at 570, 102 N.W.2d at 534. Similarly, *Foster* involved a statutory provision that conditioned a rezoning request upon the consent of neighboring private property owners without providing standards for the exercise of this power. 255 Minn. at 252–53, 97 N.W.2d at 276.

■ But Minn.Stat. § 471.6161, subd. 5, grants respondent neither the discretion or authority to create restrictions, nor the authority to determine to whom and when the restrictions apply. It was the legislature that created and imposed on employers governed by a CBA the restriction that the aggregate value of health-insurance benefits cannot be reduced unless the exclusive representative consents. Respondent's only discretion is to determine whether it will execute a waiver of the restriction and permit reduction of benefits. *See Remington,* 257 Minn. at 569, 102 N.W.2d at 534 (discretion to execute a law is not delegation of legislative power). And permitting a party to waive a statutory prohibition enacted for its own benefit is not an improper delegation of legislative power. *See O'Brien v. City of St. Paul,* 285 Minn. 378, 383, 173 N.W.2d 462, 465 (Minn.1969) (upholding consent provision in zoning ordinance which gave private parties the right to waive restrictions imposed for their benefit).

We conclude that Minn.Stat. § 471.6161, subd. 5, does not delegate pure legislative power but merely permits respondent to waive the statutory restriction on reduction of health-insurance benefits. Consequently, the district court did not err by denying appellant's motion to amend its conclusions of law to declare the statute unconstitutional.

## IV.

■ Fourth, appellant argues that the district court erred by not ordering the parties to arbitration. Appellant urges this court to apply the *Collyer Wire* doctrine, which is the National Labor Relations Board's policy of declining to exercise its jurisdiction over unfair labor disputes arising from a CBA that are subject to the CBA's grievance-arbitration procedures. *See Collyer Insulated Wire,* 192 NLRB 837, 841–42 (1971). Respondent argues that appellant waived its ability to compel arbitration by failing to raise it below. We agree.

■ Minn. R. Civ. P. 8.03 requires a party to set forth in its answer any affirmative defenses, including arbitration. Failure to do so may constitute a waiver of the defense. *Brothers Jurewicz, Inc. v. Atari, Inc.,* 296 N.W.2d 422, 428 (Minn. 1980). A party may also waive an arbitration clause by defending arbitrable claims in a court action. *County of Hennepin v. Ada–Bec Sys.,* 394 N.W.2d 611, 613 (Minn. App.1986), *review denied* (Minn. Dec. 17, 1986). Further, the right to compel arbitration is waived if it is not raised expeditiously. *Jurewicz,* 296 N.W.2d at 428.

Here, appellant did not raise arbitration as an affirmative defense in its answer and failed to raise the arbitration argument until its posttrial motion for amended findings. Ordering the parties to arbitration at this point would impede timely resolution of the controversy. *See Edina Educ. Ass'n v. Bd. of Educ. of Indep. Sch. Dist. No. 273,* 562 N.W.2d 306, 310 (Minn.App. 1997), *review denied* (Minn. June 11, 1997) (holding that, after two years of litigation, the employer had waived any right it had to compel arbitration). Consequently, appellant waived its right to compel arbitration.

■ Finally, appellant moved to supplement the record, to include a district court decision issued in another matter after this appeal was filed. The record on appeal is limited to papers filed in the

district court, plus transcripts of the district court proceedings, if available. Minn. R. Civ.App. P. 110.01. Reviewing courts may agree to consider additional cases, statutes, published rules, or publicly available articles that were not presented to the district court. *Fairview Hosp. & Health Care Servs. v. St. Paul Fire & Marine Ins. Co.,* 535 N.W.2d 337, 340 n. 3 (Minn.1995). And appellate courts may consider documentary evidence of a conclusive nature, if it supports the result obtained in the district court. *Reinsurance Ass'n of Minn. v. Timmer,* 641 N.W.2d 302, 308 (Minn.App.2002), *review denied* (Minn. May 14, 2002). Appellant urges this court to consider the materials for the purpose of reversing the district court decision and it is undisputed that the materials were not before the district court at the time of its decision. Accordingly, we deny the motion and have limited our consideration to the record created in the district court.

## V.

Finally, appellant argues that the district court erred by finding that the measure of damages for its PELRA violation was the premium differential paid by appellant as a result of the unilateral change in Choice coverage. Appellant contends that the proper measure of damages is the out-of-pocket losses incurred by respondent's members.

The district court has broad discretion in determining damages and will not be reversed except for a clear abuse of discretion. *Reiling v. City of Eagan,* 664 N.W.2d 403, 407 (Minn.App.2003) (quotation omitted). We will not set aside a damage award unless it is "manifestly and palpably contrary to the evidence." *Levienn v. Metro. Transit Comm'n,* 297 N.W.2d 272, 273 (Minn.1980). Here, appellant did not move for a new trial on damages. On appeal from a judgment when no motion for a new trial was made,

"appellate review is limited to examining whether the evidence supports the findings of fact and whether those findings support the conclusions of law." *Busch v. Model Corp.,* 708 N.W.2d 546, 551 (Minn.App. 2006). Appellate courts view the record in the light most favorable to the district court's judgment and will not disturb the district court's findings if there is reasonable evidence to support them. *Rogers v. Moore,* 603 N.W.2d 650, 656 (Minn.1999).

Respondent presented expert testimony that appellant's out-of-pocket measure of damages was not "actuarially sound" and that the premium differential was the most appropriate way to measure the damages in these circumstances. And the district court is in the best position to judge whether there was a basis in the record for damages awarded. *See LaValle v. Aqualand Pool Co.,* 257 N.W.2d 324, 328 (Minn.1977). Based on the evidence presented, the district court's findings and conclusion regarding the measure of damages are supported by the record and, therefore, is not clearly erroneous.

## DECISION

We conclude that appellant unilaterally reduced the "aggregate value of benefits" under the group health-insurance plan in violation of Minn.Stat. § 471.6161, subd. 5, and PELRA by implementing a change in the Choice coverage that resulted in greater out-of-pocket costs to retain one's choice of health-care providers; that Minn.Stat. § 471.6161, subd. 5, is not an unconstitutional delegation of legislative authority; that appellant waived its right to demand arbitration; and that the damage award is supported by the evidence. Therefore, we affirm.

**Affirmed; motion denied.**